[L. A. No. 5574. In Bank.—May 8, 1918.]

## In the Matter of the Estate of FREDERICK EMIL JEPSON, Deceased.

WILLS—PROBATE OF ATTESTED AND HOLOGRAPHIC WILL—CONFLICTING EVIDENCE—CONCLUSIVENESS OF FINDINGS.—The findings of a trial court, on a conflict of evidence, that a document offered for probate as a will was duly executed by the decedent in the presence of two subscribing witnesses, and also that it was written "entirely in the handwriting of said testator, by his own hand, and was dated and subscribed by him," must be deemed conclusive on appeal.

ID.—APPEAL—EVIDENCE—WEIGHT OF EVIDENCE—QUESTION FOR JURY OR COURT.—No rule of appellate practice is more firmly settled than that the weight of evidence is for the jury or court passing on the facts, unless the testimony is so obviously false or so inherently improbable as to require its rejection.

ID.—FAILURE TO PRODUCE SUBSCRIBING WITNESS.—Where a will, executed in the presence of two subscribing witnesses as an attested will, is also duly executed as a holographic will, section 1315 of the Code of Civil Procedure, requiring that on the contest of a will all the subscribing witnesses who are present in the county and who are of sound mind must be produced and examined, has no application, and it is no objection to the admission of such a will to probate that one of the subscribing witnesses was not produced.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—On a motion for new trial of a will contest upon the ground of newly discovered evidence, the trial court was warranted in disregarding affidavits to the effect that the disputed signature to the will was spurious, where there was no sufficient showing that the evidence could not with reasonable diligence have been produced at the trial.

ID.—CUMULATIVE EVIDENCE.—The trial court was warranted in disregarding affidavits presented on a motion for new trial of a will contest on the ground of newly discovered evidence, when the evidence presented by the affidavits was merely cumulative.

CLXXVIII Cal.—17

APPEAL from an order of the Superior Court of Los Angeles County admitting a will to probate and reviewing an order denying a new trial. John W.. Shenk, Judge.

The facts are stated in the opinion of the court.

Fred N. Arnoldy, for Appellants.

Frank Stewart, J. W. Howell, and Stewart & Stewart, for Respondents.

SLOSS, J.—Frederick Emil Jepson died in Los Angeles County on November 5, 1915, survived by his wife, Elise Jepson, and several nephews and nieces, the children of a deceased brother and sister of Jepson. No will appearing, the widow applied for letters of administration, which were granted to her. Upon her petition for the setting apart of a homestead, the nephews and nieces appeared in opposition. The superior court ruled that they were not entitled to oppose the widow's petition, for the reason, as she claimed, that the entire estate passed to her under the law of succession. The nephews and nieces appealed, and this court, on a motion to dismiss, and later, in passing on the merits of the appeals, decided that the appellants were entitled to share in the estate of the supposed intestate. (*Estate of Jepson,* 174 Cal. 684, [164 Pac. 1] ; *Estate of Jepson,* 176 Cal. 648, [170 Pac. 1182].)

About a year and a half after Jepson's death, and shortly after our decision on the motion to dismiss, the widow filed a paper as the last will of the decedent, together with a petition for its admission to probate. The nephews and nieces filed a contest, putting in issue the genuineness of the alleged will. Upon the trial the court found that the paper was duly executed by the testator in the presence of two subscribing witnesses. It further found that the will was written "entirely in the handwriting of. said testator by his own hand and was dated and subscribed by him." Orders were made admitting the will to probate, and appointing the widow, Elise Jepson, executrix. The contestants appeal from these orders. By their appeal they seek to review, also, an order denying their motion for a new trial.

The controversy turns, principally, on the sufficiency of the evidence to support the findings just mentioned. Frederick

Jepson was a native of Germany. For some years prior to 1903 he lived in Yonkers, in the state of New York. In that year he moved to California, and continued to reside in this state until his death. He was married to the respondent in 1882. The disputed paper, which was in the German language, purported to have been executed at Yonkers on the twenty-seventh day of February, 1903, a date shortly before the departure of Jepson for California. According to the testimony introduced by the respondent, it was entirely written, dated, and signed by Jepson, but it bore, after the signature of the alleged testator, an attestation clause to which the names of John Behrens and Rudolph Hettler were affixed as attesting witnesses. Hettler appeared at the trial, and testified directly and specifically to Jepson's compliance with all of the formalities required for the execution of an attested will. He also testified that the entire document, with the exception of the signatures of himself and Behrens, was in the handwriting of the decedent. His wife, who is a sister of the respondent, gave corroborating testimony concerning the execution of the paper, and also declared her opinion that the handwriting was that of the decedent. Additional opinion evidence that the paper was in the handwriting of Jepson was given by the respondent, by another witness familiar with the decedent's handwriting, and by an expert on handwriting. On the other hand, the appellants testified that, in their opinion, the signature was not genuine, and their testimony was supported by that of two other witnesses, one an expert.

This mere statement should suffice to show that the case presents a question, simply, of a conflict of evidence, upon which the trial court's determination of the issue of fact must be deemed conclusive here. The appellants argue with great earnestness and apparent conviction that the evidence offered by the respondent is unworthy of belief, and should have been rejected. No rule of appellate practice is more firmly settled than that the weight of evidence is for the jury or the court passing on the facts. It is true, of course, that testimony may be so obviously false or so inherently improbable as to require its rejection. But no such situation is presented here. Viewing, for the moment, the opinion evidence alone, we could not say that the court below should have rejected the testimony of the witnesses who declared that, in their view, the signature was that of the decedent. Photographic

copies of the will and of exemplars of Jepson's admitted handwriting are contained in the transcript, and differences between the subscription of the alleged will and signatures appearing on other writings of Jepson are pointed out. But these differences do not appear to us to be any greater or more significant than the variations between different handwritings of conceded authenticity. Even if they were more marked than they are, we should still be in no position to pass upon the genuineness of the handwriting with that degree of certainty which would be required to overthrow a finding of the trial court. A court of appellate jurisdiction cannot be expected to assume the role of a handwriting expert, for the purpose of setting aside a finding made by the trial court, and based, not only upon its own inspection and comparison of the original writings, but upon the opinions of witnesses peculiarly qualified, either by special study of the subject or by familiarity with the handwriting of the decedent. But beyond all this, we have the direct testimony of Hettler, which, as above stated, is corroborated in some degree, that he saw Jepson sign the paper. There was nothing on the face of the evidence for respondent to compel its rejection by the trial court. The appellants make much of the fact that the will was not produced until long after the decedent's death, and then only when this court had held against the widow's claim that she was entitled to take the entire estate in the absence of a testamentary disposition. But this, like other matters to which appellants point, is merely a circumstance, to which the trial judge was to give, as he doubtless did, such weight as he thought it deserved. There is no occasion to recite the several particulars brought forward by the appellants to justify their belief that the signature to the disputed paper was a forgery. These may, singly or collectively, have justified a suspicion that the alleged will was not genuine, but no greater force can be attributed to them on this appeal. On the other hand, we might, if it were necessary, call attention to various presumptions and inferences which may fairly be regarded as fortifying the conclusion reached on the trial. A careful reading of the whole record satisfied us that the attack upon the court's finding is entirely without merit.

The appellants make the further point that under the provisions of section 1315 of the Code of Civil Procedure, the will should not have been admitted to probate without the produc-

tion of Behrens, one of the subscribing witnesses.  Regardless of any other consideration, the finding that the paper was duly executed as a holographic will furnishes a sufficient answer to this point.

The motion for new trial was based, in part, upon the ground of newly discovered evidence.  Affidavits of witnesses resident in Yonkers to the effect that the disputed signature was spurious were offered.  The court was warranted in disregarding these affidavits upon the grounds, first, that there was no sufficient showing that the evidence could not, with reasonable diligence, have been produced at the trial, and, second, that it was merely cumulative.

No other points are made.

The orders appealed from are affirmed.

Wilbur, J., Richards, J., *pro tem.*, Victor E. Shaw, J., *pro tem.*, Melvin, J., and Angellotti, C. J., concurred.