[Civ. No. 16637.   Second Dist., Div. One.   July 29, 1949.]

Estate of CLARENCE CLARK, Deceased. MARTIN CARTER LEACH et al., Appellants, v. ANDREW L. NICHOLS et al., Respondents.

Crossland & Crossland for Appellants.

Bailey & Poe, Rufus Bailey, Charles E. Taintor and Scott Weller for Respondents.

WHITE, P. J.—This is an appeal from a judgment denying admission to probate of a proffered will of Clarence Clark, deceased, and from an order denying the motion of petitioner Martin Carter Leach, named as executor in said will, to set aside the foregoing judgment and to reopen the case for the purpose of receiving further testimony.

The record reflects that on October 14, 1946, petitioner and appellant Martin Carter Leach offered for probate what

was alleged to be the last will and testament of Clarence Clark and executed on or about February 10, 1944.

Thereafter, contestants and respondents Andrew L. Nichols and Cora W. Jenkins, claiming to be heirs at law of said decedent, each filed a contest to the probate of the foregoing testamentary document on the grounds that the signature attached to said will was not the signature of the decedent and that the document was not duly executed by the testator in the manner and form required by law. Following trial before the court sitting without a jury, findings were made that the document offered "was not duly executed by the said Clarence Clark in the manner and form as required by law" and "That the proof offered was not sufficient to warrant admission of said purported will." Judgment was entered accordingly, denying admission to probate of said testamentary document and refusing issuance of letters testamentary to petitioner and appellant Martin Carter Leach, named therein as executor.

The latter, together with Martin Andrew Leach and Andrew Clarence Leach, purported heirs, prosecute this appeal from said judgment; from an order directing that the foregoing contests of said will be marked "off calendar"; from the above-mentioned order denying the motion "to set aside the decision and judgment . . ."; and from the order denying a motion for a new trial.

The record reveals that a motion to vacate the judgment and to reopen the case for further proceedings was also filed by Martin E. Geibel, an attorney at law and one of counsel for appellant Martin Carter Leach. Said motion was grounded on the claim that Attorney Martin E. Geibel was a party in interest in said proceedings in that he was a creditor of the estate by reason of a contract executed by decedent on June 16, 1928, and acknowledged before a notary public on February 10, 1944, under the terms of which contract, the decedent engaged the professional services of Attorney Geibel "at the yearly rate of fifty dollars . . ., except any matter for which a service of fifty dollars be inadequate, such matter to be separately treated as occasion may arise." The motion of Attorney Geibel was made on the further ground that "new evidence has been discovered since the trial of said cause material to the rights of petitioner, which could not have been produced at the trial, which said evidence will show that the decedent, Clarence Clark, executed the will dated February 10, 1944." In support of the motion several affi-

davits were filed including one from a handwriting expert, all of which it was claimed would "establish the fact that the signature of said will is genuine and the signature of said Clarence Clark, decedent." From the order denying his motion to vacate the judgment Attorney Geibel also appeals.

Because the main question presented for determination on this appeal is whether the evidence supports the finding of the trial court that the proffered testamentary document was not executed by the decedent in the manner and form required by law and that the proof offered was not sufficient to warrant admission of such document to probate, it becomes necessary to set forth in some detail the testimony produced at the trial.

Appellant, Attorney Martin E. Geibel, one of the subscribing witnesses to the document in question, testified that the decedent, a man about 69 years of age at the time of the claimed execution of the will, had been a client of his since about 1923; that he was an eccentric person. That on the morning of February 10, 1944, decedent came to the office of the witness insisting that his will be immediately prepared on the basis of some notes decedent had made the night before. That Attorney Geibel's secretary, Mary Silber, was not in the office at that time, having been called to the bedside of her sick mother. Attorney Geibel suggested to the decedent that they await the return of Miss Silber. However, the decedent insisted that the will be drawn at once. He then read from his notes and Attorney Geibel in longhand drafted a will as the decedent read from the notes. When the reading of the notes was completed the decedent insisted the will drawn therefrom be executed at once, and accompanied by Mr. Geibel, he went to a public stenographer named Gertrude M. Berg at the Rosslyn Hotel, of whose services Mr. Geibel frequently availed himself. A will was then dictated to Miss Berg based upon the will previously written by Mr. Geibel in longhand. However, the disinheritance clause was changed to provide for the payment of $5.00 to anyone who contested the will rather than nothing as provided in the handwritten will. The services for this typing were paid for; a receipt was issued by Miss Berg which was introduced in evidence.

Attorney Geibel testified that he and the decedent then returned to the former's office and shortly thereafter Miss Silber reached the office, at which time the will was executed, Attorney Geibel and Miss Silber being the attesting wit-

nesses. That a few moments later a telephone call from Miss Berg informed Attorney Geibel that he or decedent had left an envelope at her office. That Mr. Geibel immediately left his office, picked up the envelope and upon his return noticed that the decedent was erasing his signature on the will written in longhand. That when questioned as to what he was doing, decedent said, ''I like this paper better than the typed paper which I signed, and I had signed it in lead pencil, and I am erasing my lead pencil signature and I am going to sign this paper with ink. I prefer it to that other paper.'' Decedent further informed Attorney Geibel that he did not like the provision bequeathing $5.00 in the disinheritance clause, that he had heard that wills written upon ladders or scraps of paper were good and valid, that the handwritten will was good enough for him, and that he insisted upon its execution. That the decedent then signed the handwritten will in the presence of Attorney Geibel and his secretary, who, as attesting witnesses, signed in the presence of the testator and in the presence of each other. That this document was then filed in Attorney Geibel's office.

As an exemplar of the signature of the decedent, proponents introduced into evidence the foregoing employment contract between Attorney Geibel and the decedent. The former testified that the latter insisted on signing it before a notary public, though advised by the attorney that this was not necessary. That, however, the agreement was then signed on February 10, 1944, in the presence of the aforesaid Gertrude M. Berg, a notary public, who acknowledged the signature of decedent and affixed her notarial seal.

Mary Silber, secretary to Attorney Geibel, corroborated the latter in regard to the formalities in connection with the claimed execution of the testamentary document in question and also with reference to the events which transpired subsequent to her arrival at her employer's office on February 10, 1944.

Gertrude M. Berg, a public stenographer and notary public, also testified in corroboration of the foregoing testimony given by Attorney Geibel and Miss Silber with reference to matters relating to the participation of Miss Berg in the typing of a will on February 10, 1944, and with reference to an envelope being left at her office on the occasion of the visit of decedent and Attorney Geibel thereto. This witness also testified to the taking by her of the acknowledgment

of decedent to the aforesaid employment contract between the latter and Attorney Geibel.

Received as evidence in opposition to the admission of the proffered will to probate was the testimony of Lieutenant Louis C. Davis of the Los Angeles Police Department, whose specialized work in that department for some 19 years consisted of the examination of handwriting and questioned documents. It is not necessary to here detail the qualifications of the witness as disclosed by the evidence because it was stipulated that he was "amply qualified." Over the objection of appellants, this witness was appointed by the court to make an examination of the exhibits in the case, including the challenged testamentary document. He testified that the signature, "Clarence Clark," on the will offered for probate was not made by the same person who signed various admittedly genuine exemplars, including checks and other documents containing decedent's genuine signature, which were admitted into evidence and examined by the expert witness.

As a first ground of appeal it is urged that the court committed prejudicial error in admitting over objections, evidence that the witness, Attorney Geibel, one of the subscribing witnesses to the will offered for probate, had been suspended from the practice of law. In this regard it is appellants' contention that it is only the conviction of a felony that furnishes grounds for impeachment. In the instant case, Attorney Geibel had testified on direct examination that, "I have been representing Clarence Clark (decedent) mostly after the death of his mother December 25, 1923." On cross-examination the following occurred:

"Q. . . . I believe you said you acted continuously for Clarence Clark from the date of this contract, 16th day of June, clear through until the time of his death. Is that a true statement, Mr. Geibel? A. For the most part, yes.

"Q. Were there any interruptions? A. Possibly. I was in the east from around about September, 1939 until along into the summer or late fall of 1940, an entire year on business in connection with the settlement of my father's estate and some business in Tennessee and Salt Lake City.

"Q. So you are not contending you represented Mr. Clark during the period from 1938 to 1941, are you, Mr. Geibel?

. . . . . . . . . . . . . .

"The Witness: That matter—I didn't do any legal work for Mr. Clark during that particular period I was in the east on business."

Following some discussion the witness was asked:

"Q. Did you have the capacity to represent Clarence Clark during the period from 1938 to 1940?"

Following some further discussion, the following ensued:

"Q. The fact is that you were suspended from the practice of law during the time you testified that you represented Mr. Clark? A. I had a problem, yes.

"Q. I tried to spare you that. A. I am not ashamed of that because I still maintain I was right in that matter, and I had Justices of the Supreme Court who were with me on the matter."

Appellants insist that "the obvious effect of the record as it stands was to prejudice the trial court against the witness (attorney Geibel) and jeopardize the establishment of the genuineness of the document as the last will of Clarence Clark."

While it is true that evidence properly admissible upon the issue presented cannot be excluded because it may have ulterior or collateral effects detrimental to one of the parties (*Avery* v. *Wiltsee,* 177 Cal. 484, 486 [171 P. 95]; *Lampton* v. *Davis Standard Bread Co.,* 48 Cal.App. 116, 120 [191 P.2d 710]; *Taylor* v. *Oakland Scavenger Co.,* 17 Cal.2d 594, 605 [110 P.2d 1044]), we are persuaded that the question concerning appellant Geibel's suspension from the practice of law was not proper cross-examination and should not have been asked. In no way did it tend to prove or disprove the ultimate issue presented, which was whether the proffered testamentary document was executed in the manner and form required by law.

It must be borne in mind that this was not a jury trial, and as was so cogently pointed out in *People* v. *Albertson,* 23 Cal.2d 550, 577 [145 P.2d 7] (quoting from Wharton's Criminal Evidence § 360, p. 567), " 'It does not reflect in any degree upon the intelligence, integrity, or the honesty of purpose of the juror that matters of a prejudicial character find a permanent lodgment in his mind, which will, inadvertently and unconsciously, enter into and affect his verdict. The juror does not possess that trained and disciplined mind which enables him either closely or judicially to discriminate between that which he is permitted to consider and that which he is not. Because of this lack of training, he is unable to draw conclusions entirely uninfluenced by the irrelevant prejudicial matters within his knowledge . . .' " On the other hand, there is little, if any, justification for the assump-

tion that the trained mind of the trial judge who presided in the case at bar considered the foregoing testimony for any other than what he conceived to be the limited purpose of cross-examination, or was influenced to the prejudice of appellant Geibel by the testimony to which objection is here made.

It is next contended that the trial judge erred ''in appointing, over objection, attorneys as amici curiae to examine witnesses rather than examine the witness himself, as the only attorneys who may participate in a will contest are attorneys representing qualified contestants.''

The situation of which appellants complain arose at the conclusion of the direct examination of appellant Geibel, one of the subscribing witnesses to the proffered will, when Attorneys Taintor and Bailey expressed a desire to cross-examine the witness. Objection was made on the ground that these attorneys did not represent any of the parties to the particular proceeding then before the court. Attorney Taintor was one of counsel for Andrew L. Nichols and Cora W. Jenkins who had filed contests to the probate of the will in question, which contests were at issue and then pending before the court. Attorney Bailey stated that he was representing Richard Young, guardian of one of the heirs. After some argument concerning the rights of Attorneys Taintor and Bailey to participate in the proceeding the court said:

''I see no reason why you couldn't appear as friend of the Court without representing anybody. If you have information in your possession, it might be your duty as an officer of this Court to present it to the Court.

. . . . . . . . . .

''THE COURT: It is the duty of the Court to find out whether a will is properly executed.

''MR. CROSSLAND (one of appellants' counsel): That is exactly why we are here today.

''THE COURT: And if anyone has evidence in their possession to show that there is a possibility that the will was not properly executed, they should present it to the Court.

''MR. CROSSLAND: We have no objection to that, your Honor, but when they start to cross examine witnesses, we wish to state they are here representing somebody, because they are acting as attorney for someone.

''THE COURT: Very well, I will ask him to examine as friend of the Court, to examine this witness.''

When the foregoing discussion arose the court was engaged in the proceeding for the probate of the will as distinguished from the proceedings upon the contest. ▇ The proofs upon the petition for the probate of the will (commonly referred to as the preliminary proof) may be made either before or after the hearing of the issues upon the contest. ▇ As was said in *Estate of Relph,* 192 Cal. 451, 459 [221 P. 361] : ''The contestants are not parties to this proceeding and have no right to appear therein (*Estate of Latour, supra* [140 Cal. 414 (73 P. 1070, 74 P. 441)]), but the trial court, having itself the right to cross-examine the witnesses produced therein, may, in the exercise of its discretion, permit counsel for contestants so to do. (*Estate of Cullberg, supra* [169 Cal. 365 (146 P. 888)].) But when such permission is granted it is as a matter of grace and not in recognition of a right possessed by contestants.'' The trial court had the power to require the proponent of the will to make a prima facie case, and having the power itself to examine the witnesses, committed no error in delegating that power to counsel for the contestants and the guardian of one of the heirs (*Estate of Latour,* 140 Cal. 414, 421, 422 [37 P. 1070, 74 P. 441]).

▇ The third ground urged for a reversal is that the court erred in denying a petition to reopen the case for further trial. In support of this claim appellants direct our attention to the affidavits of appellant Martin E. Geibel, Maurice F. Geibel, Mary J. Geibel, and L. Dale Gasteiger, handwriting expert and examiner of questioned documents. The affidavit of Mr. Gasteiger sets forth that after an examination made by him it was his opinion and conclusion that the signature of decedent on the proffered will, as well as on the foregoing contract of employment, was true and genuine. An examination of the supporting affidavits, in the light of the record before us, leads to the inevitable conclusion that the testimony therein offered was cumulative, and with reasonable diligence could have been produced at the trial. Upon such a showing, the court was warranted in disregarding these affidavits in considering the motion to reopen the case for further testimony and in passing on the motion for a new trial (*Estate of Jepson,* 178 Cal. 257, 261 [172 P. 1107]). Therefore, it can not be said that the court abused its discretion in refusing to reopen the case for further proceedings.

▇ Finally, appellants earnestly urge that the evidence is insufficient to support the judgment rendered. In justice to appellants we must state, in passing, that the evidence

would have been sufficient to sustain an order admitting the proffered will to probate had the trial court so concluded. However, it is firmly established in our law that the duty of a reviewing tribunal "begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support . . ." the findings and conclusion reached by the trier of facts (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689]). When a judgment is predicated upon a question of fact, it is supported by the evidence although the testimony in relation thereto is in complete conflict. Such is the situation with which we are confronted here. A court of appellate jurisdiction cannot be expected to assume the rule of a handwriting expert, for the purpose of setting aside a finding made by the trial court, and based, not only upon its own inspection and comparison of the original writings but upon the opinion of a witness peculiarly qualified by special study of the subject.

Appellants' contention that the testimony of handwriting experts should not be permitted to overcome the positive testimony of attesting witnesses, whose testimony is unimpeached, and apart from the testimony of the handwriting expert, uncontradicted, is answered by what was said by this court in *Estate of Kisling,* 68 Cal.App.2d 163, 166, 167 [156 P.2d 57], as follows: "By reason of the foregoing testimony and from an examination of the questioned document, the photographs and writings admittedly that of decedent, by the court, which was proper, the court pointed out certain variations in the exemplars and the questioned document, from all of which the court concluded that the claimed testamentary document was not entirely in the handwriting of decedent, saying 'this is one case where I don't think you need so much handwriting expert as good eyes.' Based upon the testimony of the expert witness and upon his own examination of the questioned document, the trial court stated that he could not give any credence to the testimony proffered by appellant that the document under consideration was written by the decedent. Under well established and oft repeated rules which require no citation of authority, it must be held that the evidence relied upon by the court for its decision is of sufficient substantiality to sustain the finding made thereon."

The attempted appeals from the order "ordering the contest of will before probate of Cora W. Jenkins and contest of will before probate of Andrew L. Nichols off calendar"

and denying the motion for a new trial are dismissed. The judgment and the order made after final judgment denying the petition and motion to "set aside the decision and judgment" are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.