[Civ. No. 21603.   Second Dist., Div. Two.   July 24, 1956.]

Estate of JAMES E. HARVEY, Deceased.   ANNIE G. HARVEY, Appellant, v. JESSE E. HARVEY et al., Respondents.

Littlejohn & Callister and Roy Littlejohn for Appellant.

William F. Peters for Respondents.

ASHBURN, J.—Appeal by decedent's widow from judgment and order admitting to probate his will of July 24, 1950, denying her petition for letters of administration, dismissing her contest and appointing as executors testator's brother, Jesse E. Harvey (Jesse, Sr.) and his nephew, Jesse M. Harvey (Jesse, Jr.).

Though numerous grounds of contest were alleged, no evidence of substantiality was introduced in support of any of them except the claim that the will was not executed by testator, not actually signed by him. The case was tried without a jury and the trial court found that the will was duly executed by the testator on the date it bears. Appellant's counsel initially assert in their opening brief that the evidence conclusively establishes the contrary, but before the argument has proceeded far it degenerates into one of the

incidence of the preponderance of the evidence. Under the impact of respondents' arguments the reply brief claims no more than a preponderance in favor of contestant.

The appellate courts are required to reiterate from day to day, and with unremitting monotony. these fundamental principles of review: That the appellate court cannot weigh the evidence to determine where the preponderance lies; that its duty begins and ends with a determination of whether there is any substantial evidence, contradicted or uncontradicted, which supports the finding of fact; and that when two or more inferences reasonably can be deduced from the evidence the reviewing court cannot substitute its own inferences for those of the trial court. (See *Primm* v. *Primm*, 46 Cal.2d 690, 693-694 [299 P.2d 231].) The evidence thus construed presents the following situation.

The will, executed on July 24, 1950, left the family home and furnishings to the wife, provided for a family allowance for her during probate, and placed the remainder of the estate in a trust which endures for 10 years from testator's death or until one of his two daughters becomes 25 years old. This latter event will occur about six years after testator's death, which was on December 13, 1954. Income from the trust goes one-fourth to the wife, one-fourth to each of testator's two daughters, and one-fourth to his sister, Ruby Foulks. In the event of the death of any beneficiary her share goes to the survivors. Principal is to be distributed upon termination of the trust in the same manner as the income, namely, one-fourth to the wife and to each of the other beneficiaries. The will also includes a distress clause in favor of the wife. The executors are Jesse, Sr. and Jesse, Jr., neither of whom takes anything under the will except reasonable compensation for his services.

Decedent was one of three brothers who operated a concern engaged in the rock and gravel business under the name of Harvey Bros. One brother, Frank, predeceased testator, dying in 1946. About four days before the date of the will decedent asked his nephew, Jesse, Jr., who was office manager of the plant of Harvey Bros., to have the firm's attorney draw a new will for him; he told Jesse what he desired it to contain, and asked him to write it down; Jesse did so. and read his notes back to his uncle. He then telephoned the lawyer, instructed him to draw the will and read his notes "as to what he wishes in the new will." Attorney Bridges took the information and prepared the will. In about two days Jesse received

it at the attorney's office and took it to the plant. Testator soon called and asked Jesse if he had the new will. Being assured of that, he came to the plant on July 24th, asked to see the will and the notes which Jesse previously had made. He read the will and the notes for a long period of time, said he wanted to sign the will and asked Jesse to get some witnesses. The latter went next door to the Universal Cast-Iron Company, asked Mr. Russell E. Persion and Mr. Leslie M. Percey to act in that capacity. They soon arrived at the Harvey Bros. plant and were taken into Jesse, Jr.'s office where testator was seated. The door was closed, testator produced the will and asked Persion and Percey if they were there to witness the signing of his will. They replied in the affirmative and Jesse, Jr., testified that testator then dated and signed the will and each of the witnesses also signed it. All this was done in the presence of Jesse. He produced his original notes in court. The original will was shown him and he identified it as the one signed by decedent and the two witnesses on that day, July 24, 1950. He knew his uncle's signature, having seen it innumerable times, and testified that he saw it affixed to the will on the occasion in question.

The witness' father, Jesse, Sr., had been in the adjoining office during the execution of the will. Testator having taken the will into his own possession, came into the room where Jesse, Sr. was, told him that he had just signed his will and made him and his son executors, and asked him to read it over to see if he would accept the appointment. He did read it and said he would accept. The will was handed back to the testator who headed toward the room where the office safe was located. When he died, four years later, it was found in that safe to which he had had access during all that period. Testator was in the habit of keeping insurance papers and similar documents in that repository. Indeed, an earlier will of June 3, 1925, was also found in that safe.

Attesting witness Persion recalled the occasion of execution of the will, although he was not certain of the date. He testified that Mr. James Harvey, the testator, exhibited the last page of the document, said it was his will, that he, Persion, saw testator sign the will, and that he and Mr. Percey did likewise. He also identified the signatures of himself and of Percey on the document. Mr. Percey recalled Jesse, Jr., having asked them to come over to the Harvey Bros. plant. He identified his own signature on the will but did not recall seeing testator or Persion sign. In May, 1954,

this witness had suffered a coronary thrombosis, which inferentially impaired his memory. ■ Of course the attestation clause with proof of the three signatures raised a presumption of due execution. (*Estate of Morey,* 75 Cal.App.2d 628, 634 [171 P.2d 131].) ■ And the forgetfulness of one of the attesting witnesses could not destroy the other proof. (26 Cal.Jur., § 125, p. 791.)

To disprove the execution of the will contestant relied wholly upon circumstantial evidence. It was to the effect that decedent could not have made the will on the day of its date because he was desperately ill at home; that on that day he was in fact delirious and incapable of transacting any business. Dr. Price, his physician, testified that he was delirious. Contestant said that he was out of his mind and unconscious and that he was delirious and incoherent for a solid week. Reverend Miller said he was in a stupor and insane. Louis Jackson said that he was dazed and wandering and did not recognize the witness. Blanche Dodson said he was insane. The showing is persuasive but it rises no higher than a substantial conflict in the evidence. ■ "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. (*Kidroski* v. *Anderson,* 39 Cal.App.2d 602, 605 [103 P.2d 1000].) ■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citing cases.] ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends (*Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 781 [117 P.2d 850].)" (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].)

■ A significant feature of contestant's case is that, although she was claiming throughout that the signature on the will was not that of her husband and hence was a forgery, she called no handwriting expert until after she had lost the case. Indeed she did not undertake to testify from the will itself that the signature was not genuine, and she had been married to decedent for many years. The daughter, Anita

Fisher, was called as a witness to substantiate certain circumstantial items of evidence. She testified on cross-examination that she knew her father's signature, but she was not asked whether the signature on the will was genuine. Alice B. Harvey, widow of Frank, was office secretary at Harvey Bros. for many years and presumptively familiar with decedent's signature. She was a witness for contestant but was not asked whether the signature on the will was genuine. No witness testified that the signature on that document was not that of the testator. The finding that the will was executed by decedent on the date it bears cannot be disturbed by this court.

Appellant claims error in denial of her motion for new trial. In support of same she filed the affidavit of a handwriting expert, Mr. A. Henry Silver, who therein expressed the opinion that decedent did not write the signature on the will but that Jesse E. Harvey had written it. No explanation of any kind was given respecting contestant's failure to call this witness or other experts at the trial. The Silver testimony, if received, would be merely a cumulative addition to the circumstantial evidence which had been directed toward the desired conclusion of forgery. In the absence of a showing of diligence there was no error in refusing to reopen the case for the receipt of such cumulative evidence. (*Estate of Jepson,* 178 Cal. 257 [172 P. 1107]; *Estate of Clark,* 93 Cal.App.2d 110, 118 [208 P.2d 737].) No other claim of error is advanced with respect to denial of the motion.

Judgment and order affirmed.

Moore, P. J., and Fox, J., concurred.