[Civ. No. 22921. Second Dist., Div. Two. Apr. 2, 1958.]

Estate of EMANUEL M. BROWNE, Deceased. HUGO C. BRUNI, Appellant, v. MARY M. RISDON et al., Respondents.

J. M. Sinclair and Robert W. Herrick for Appellant.

Anthony V. Randles and Roger Pryor for Respondents.

KINCAID, J. pro tem.*—Contestant Hugo C. Bruni, brother of the decedent, Emanuel M. Browne, appeals from the order of the trial court granting the motion of proponent Mary M. Risdon to vacate and set aside the order denying probate of will and for a new trial. ■ The motion for new trial was upon the grounds of: (1) insufficiency of evidence to justify the decision and judgment; (2) that said judgment is against law. The order granting the new trial is silent as to any specification of the ground of insufficiency of evidence to justify the decision so it must be presumed it was granted on the ground that the decision or judgment is against law. (Code Civ. Proc., § 657.)

■ The order denying probate of will was made by the court during the course of a jury trial involving the issues of both petition for probate of a will and contest of the will before probate. The order recites: ". . . after examining the petition and hearing the evidence of the two witnesses to said proposed will, and petitioner having rested, and finding that decedent, at the time of signing said will, did not declare same to be his will but did affirmatively declare same not to be his will . . . the document . . . be denied probate as the last will of said deceased."

The contest of the will before probate was based upon the three grounds of (1) unsoundness of mind at the time of execution; (2) the will was not executed in the manner and form required by law; (3) undue influence. A jury having been duly empaneled evidence was received in behalf of the

*Assigned by Chairman of Judicial Council.

proponent. This evidence consisted of the testimony of the two witnesses to the execution of the will and several exhibits. Without receiving any evidence in behalf of the contestant or submitting any issue of fact for determination by the jury the court made its order denying the document to probate.

Such an order may properly be made by the court only where the proponent of the will fails to make a prima facie showing that the will was executed in all particulars as required by the Probate Code.  ▮▮▮ As said in *Swift* v. *Superior Court,* 39 Cal.2d 358, 365 [247 P.2d 6]: ''If the proponents fail to make such prima facie showing, the court can properly deny the petition for probate and dismiss the contest, but the court must bear in mind the holding of *Estate of Black, supra,* 199 Cal. 257, wherein it is stated at page 262 [248 P. 1015]: 'We are satisfied that upon proceedings for the probate of a will involving both a contest of the will and a petition for probate the court is not at liberty, upon the preliminary and formal showing of due execution, to finally determine upon its merits, any of the issues raised by the contest but is limited to a determination of whether or not a *prima facie* case has been established in favor of the validity of the will, sufficient to warrant the submission of the case to a jury.' ''

Here, as in the Swift case, direct issues are raised by the contest and answer thereto, as to the due execution of the will, the soundness of decedent's mind and the presence or absence of undue influence. In its opinion in that case the court continues: ''Since all of these issues are either mentioned specifically in section 371 of the Probate Code, or are 'questions substantially affecting the validity' of this alleged . . . will as provided therein, petitioners are entitled to have all of them submitted to the jury unless upon the preliminary proof of the will there is 'such a dearth of evidence that the granting of a motion for a nonsuit would be proper.' ''

▮▮▮ The document here offered for probate appears on its face to be regularly executed in all respects. It is declared to be the last will and testament of the decedent, carries his signature and contains an attestation clause with the signature of each of the witnesses thereto who testified herein. This is sufficient to raise a presumption that the will had been duly executed. (*Estate of Morey,* 75 Cal.App.2d 628, 634 [171 P.2d 131]; *Estate of Pitcairn,* 6 Cal.2d 730, 732 [59 P.2d 90].)

This presumption was to be weighed with the testimony of the subscribing witnesses as to what took place and as to what they did or did not remember. ■ The forgetfulness of one of the attesting witnesses does not destroy the other proof. (*Estate of Darilek,* 151 Cal.App.2d 322, 325 [311 P.2d 615]; *Estate of Harvey,* 143 Cal.App.2d 368, 372 [299 P.2d 712].)

■ The attesting witnesses were James D. Randles, decedent's attorney, who had drawn the proposed will in accordance with decedent's instructions and his son, Anthony V. Randles, who is also an attorney.

Both witnesses testified that the decedent in their presence declared the document to be his will, signed it and asked them to sign it as witnesses; that each signed in the presence of the decedent and of each other, that in their opinion the decedent was of sound and disposing mind at and before the time of such signing.

Anthony V. Randles testified that after fully reading the document to the decedent James D. Randles asked ''Now is that what you want?'' The decedent said, ''Well, yes, that is just the way I told you. . . . I have been thinking though, about a couple of others that I would like to have included in it.

''My dad said, 'Well, do you want us to change this?' ''And he said, 'No, This is the way I want it. This is the way I told you to fix it up,' and he said, 'We can take care of the others later.'

''So Dad said, 'Well, all right. Now, you sign here,' and I remember we went to get one of these—there was some to-do about whether or not he was going to use the table that swung out over the bed, and he signed his name, and, as I recall, I said, 'Well, now, we have your name down here as Emanuel instead of just the initials.'

''So he said, 'All right.' So he signed it again using his full name of Emanuel.

''My father said, 'Now, do you declare this to be your will and do you want Tony and me to sign as witnesses?', and he said 'Yes, I do.'

''So my father and I both signed as witnesses. Then my dad said, 'Now, what do you want me to do with this will?' ''He said, 'Well, can you keep it for me?'

''Dad said, 'Yes. If you don't have any place to keep it now, we will keep it down in our office safe.'

''And he said, 'That will be fine.'

"Then my dad said, 'Now what about these others that you wanted to be remembered in here?'

"He said, 'Well, it is more just to remember them; nothing very much.' He said, 'I want'—I believe the man's name was Hogan or Logan—Hogan—he said, 'He works with me down in the office.' He said, 'I would like to leave the sum of $250 cash' and he mentioned some kind of art work, as I recall—I forget what it was—and described it.

"My dad said, 'Well, we better write this down.'

"He said—well, if I recall, it was a painting and he gave the painter's name and the year which it was dated, and he said, 'Now, there is my secretary down there that I want to remember.' I believe her name was Arroya—Isabel Arroya, I believe. He said, 'I want her to have the sum of $250, and there is some silver and there is some linens. I don't care about the ones that I have used,' he said, 'but I have some that have never been used there and' he said, 'I would like to see her get those.'

"I remember my dad made some notes on this, took it down on a sheet of paper and said, 'Well, I will fix this up and bring it back to you.'

"And he said, 'Fine.'

"Dad said, 'Whenever it is convenient to get around to it, we will add those to it and make a new one.'

"As I recall, that is the substance of our conversation."

The testimony of James was substantially the same as that of his son Anthony excepting that he could be not be certain as to whether the decedent declared his wish to include the bequests to his two friends before or after he had signed the will and it had been signed by the attesting witnesses. He was equally certain with Anthony that the decedent expressed himself as desiring to fully execute the first instrument in question as his will, and having it stand as such until a subsequent will or codicil should be executed by him including such bequests.

It further appears that about a week later the two Randles returned to the hospital to see the decedent bringing with them another proposed will substantially similar to the one already executed excepting that the requested bequests to the two friends were included. They found decedent too ill to then be disturbed and at his request agreed to return later. Decedent died before this instrument was ever executed.

From the foregoing it is apparent that by way of preliminary proof of the will there is not "such a dearth of evi-

dence that the granting of a motion for a nonsuit would be proper.'' (*Estate of Black, supra,* 199 Cal. 257, 262.) The action of the trial court in taking the case from the jury by then denying the petition for probate had the effect of a final determination of the issues on the merits, whereas, a prima facie case in favor of the validity of the will having been established, the court, as a matter of law, was required to submit the issues to the jury for determination.

Under such circumstances the court properly granted the motion to vacate and set aside the order denying probate of will and for a new trial. (*Carney* v. *Simmonds,* 49 Cal.2d 84, 89-90 [315 P.2d 305].)

The order appealed from is affirmed.

Ashburn, Acting P. J., and Herndon, J., concurred.

A petition for a rehearing was denied April 28, 1958, and appellant's petition for a hearing by the Supreme Court was denied May 27, 1958.