[Sac. No. 5541.   In Bank.   Jan. 29, 1943.]

H. A. S. LOAN SERVICE, INC. (a Corporation), Appellant,
v. CHARLES J. McCOLGAN, as Franchise Tax Com-
missioner, etc., Respondent.

L. J. Styskal and M. E. Barth for Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Valentine Brookes, Deputy Attorney General, for Respondent.

CARTER, J.—A tax at the rate of 8 per cent on the net income of plaintiff corporation was levied by the State of California for the year, August 31, 1936, to August 31, 1937, pursuant to the Bank and Corporation Franchise Tax Act. (Stats. 1929, p. 19, as amended in 1935; Deering's Gen. Laws, 1937, Act 8488.) The tax was paid under protest and plaintiff commenced this action to recover the amount so paid. The trial court rendered judgment in favor of defendant, and plaintiff prosecutes this appeal therefrom.

The tax was based upon a classification of plaintiff as a financial corporation under the Bank and Corporation Franchise Tax Act. That act (Stats. 1929, p. 19, § 1, as amended) adopted method number 4 set forth in the United States Statute for the taxation of national banking associations (12 U.S.C.A., § 548). The United States Statute, and plan 4 to which reference is made, reads: "The legislature of each state may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several states may . . . (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are coupled with: 1. . . . (c) In case of a tax on or according to or measured by the net income of an association, the taxing State may, except in case of a tax on net income, include the entire net income received from all sources, but the rate shall not be higher than the rate assessed upon other financial corporations nor higher than the highest of the rates assessed by the taxing State upon mercantile, manufacturing, and business corporations doing business within its limits: . . . " By the terms of the

Bank and Corporation Franchise Tax Act, the tax is according to or measured by the income. (Stats. 1929, p. 19, § 1, as amended.) And the rate of tax on national banks, other banks, and financial corporations is the same and may not be in excess of 8 per cent. (Stats. 1929, p. 19, §§ 1, 2, 4, 4a, as amended.) The tax system is designed to eliminate inequalities in the tax burdens imposed upon business corporations and banks. Financial corporations are classed with banks both national and state in order that the tax burden they must bear shall not be less than that of banks, and thus in harmony with the federal statute. (12 U.S.C.A., § 548.)

In determining whether there exists the discrimination prohibited by the federal statute it is necessary to take into consideration the state's tax structure as a whole and ascertain therefrom whether the tax burden is greater on national banks than on state banks or mercantile, business, manufacturing and financial corporations. (*Tradesmen's Nat. Bank* v. *Oklahoma Tax Comm'r.*, 309 U.S. 560 [60 S.Ct. 688, 84 L.Ed. 947].) The manifest purpose of the Legislature in establishing the classification ''financial corporations'' was to avoid the tax discrimination denounced by the federal statute. Thus we must look to the intent of the federal statute. It is expressed in *First Nat. Bank* v. *Anderson*, 269 U.S. 341, 347 [46 S.Ct. 135, 70 L.Ed. 295] as follows:

''The purpose of the restriction is to render it impossible for any State, in taxing the shares, to create and foster an unequal and unfriendly competition with national banks, by favoring shareholders in state banks or individuals interested in private banking or engaged in operations and investments normally common to the business of banking.''

The court in the instant case found that: ''During the period involved plaintiff was doing business in Los Angeles in active, substantial competition with national banks operating in the same locality, and both were then and there engaged in seeking and securing capital investments of the same class, and as herein found, and plaintiff used its capital for the purposes herein stated. Plaintiff made small loans of amounts up to Five Hundred Dollars ($500), and national banks operating in Los Angeles made small loans of similar amounts.'' Without determining whether plaintiff's conduct as a separate corporate entity would establish its classification as a financial corporation it cannot be doubted that its ac-

tivity coupled with that of the Marshall Finance Company, a corporation, fall within the operations contemplated by that term. The operations of the two corporations consisted of making small loans in the Los Angeles area. National banking associations were also making small loans in the same area, and there is direct evidence that the small loan companies were in competition with the national banks in that field. Therefore, within the meaning of the federal statute and Bank and Corporation Franchise Tax Act, the two corporations considered as a unit were operating as a financial institution. (See *Morris Plan Co. of San Francisco* v. *Johnson,* 37 Cal.App.2d 621 [100 P.2d 493].)

In the foregoing discussion we have treated plaintiff and the Marshall Finance Company as one, although they are separate corporate entities. In this connection the court found: "Plaintiff and Marshall Finance Co. were controlled by the same persons, the majority of the stock of each was owned by the same persons or their families, and the two corporations were formed and utilized to conduct the small loan business in a manner which was a subterfuge to avoid the California usury laws, as well as the Franchise Tax law; . . . . Plaintiff and Marshall Finance Co. operated as a unit and the unit was in competition with national banks. Marshall Finance Co. could not have operated at a profit without its connection with plaintiff." Those findings are supported by the evidence. The mode of operation of the business was as follows: Plaintiff advertised that it would arrange and negotiate loans. Its advertising intimated that it would make loans. A prospective borrower would call at plaintiff's office and apply for a loan executing an agreement between him and plaintiff, the printed form of which provided that plaintiff would act as his agent or broker to obtain a loan from the Marshall Finance Company, for which he was to pay plaintiff a fee. Plaintiff agreed to "procure and/or negotiate" the loan and to guarantee the repayment thereof by the borrower. The borrower agreed that he would give as security for plaintiff's guarantee a chattel mortgage or wage assignment; that he would reimburse plaintiff for any sums expended by it in the collection of any part of the loan. Plaintiff would make a credit investigation of the borrower and submit it to the Marshall Finance Company. The borrower signed a draft upon the Marshall Finance Company,

and if the latter approved the loan, it would transmit the money to him through plaintiff. Plaintiff deducted therefrom the amount of its fee. If the borrower defaulted on his loan the plaintiff paid the Marshall Finance Company, and for that purpose maintained a 10 per cent cash reserve with that company. In case of default plaintiff collected or endeavored to collect from the borrower by suit or otherwise.

In addition to the foregoing method of doing business it also appears that the plaintiff's business was more profitable than that of the Marshall Finance Company because it was not restricted in respect to the amount of fees it could collect. There was little profit in the Marshall Finance Company's business as it could charge only the legal rate of interest, and in the language of one of its officers "had to operate through brokers in California." One witness testified that plaintiff was "put out of business" by the state Legislature in 1939, presumably referring to the Personal Property Brokers Act as amended in 1939 (Stats. 1909, p. 969, as amended in 1939; Deering's Gen. Laws, 1939 Supp., Act 5825) and the California Small Loan Act. (Stats. 1939, ch. 1045; Deering's Gen. Laws, 1939 Supp., Act 7700.) The two corporations were incorporated under the laws of Delaware, qualified to transact business and ceased doing business in California at about the same time. A number of the officers and directors of both corporations were residents of Michigan. Apparently neither of the corporations transacted business elsewhere than in California. Plaintiff had an "understanding" with the Marshall Finance Company that the latter would be the lender for loans negotiated by the former when they commenced doing business in California. Although there is testimony that plaintiff negotiated loans for one or two other lenders, it is vague and indefinite, and the printed form of agreement used by plaintiff contained the name of Marshall Finance Company as the one from whom the loan would be obtained for the borrower. The two corporations occupied offices in the same building, and Samuel Goldstein was the manager of plaintiff and Benjamin Goldstein was president of Marshall Finance Company. The same persons held some of the stock of both corporations, and the great majority of stock of each corporation was owned by persons with similar surnames from which it may well be inferred that they were related. From all of those circumstances it

is reasonable to infer that the corporate device was being used by the two corporations as means of thwarting the law.

Plaintiff refers to conflicting evidence, testimony that neither of the corporations held any stock nor had any interest in the other and operated independently of each other; that the plaintiff did not loan any money; that Marshall Finance Company was the sole lender; that plaintiff was merely a broker holding a state license as a personal property broker; and that the directorate of the corporations were different. Giving effect to the inferences which may be drawn from the business methods of these corporations as disclosed by the record, the above-mentioned evidence does nothing more than create a conflict which the trial court has resolved against plaintiff. ■ An inference is a deduction which the reason of the trier of fact makes from the facts proved (Code Civ. Proc., § 1958), and is indirect evidence. (Code Civ. Proc., § 1957.) It is well settled that evidence of this character is sufficient to support a judgment. Particularly in cases involving the disregard of a corporate entity, the evidence although circumstantial is sufficient; each case must rest upon its special facts, and such determination is peculiarly within the province of the trier of fact. (See *Stark* v. *Coker*, 20 Cal.2d 839 [129 P.2d 390].) ■ The manner in which the business was conducted, particularly the guarantee of the payment of the loans by plaintiff and the other circumstances above outlined furnished convincing evidence to support the findings. The testimony by the officers of plaintiff and Marshall Finance Company was that of interested witnesses.

■ Under the circumstances here presented the two corporate entities were in fact one, or if they be considered separate, two, in effect, engaged in a single business. The corporate entity may be disregarded when it is used to evade the law.

Plaintiff cites *Pittsburgh & Buffalo Co.* v. *Duncan, et al.*, 232 F. 584 [146 C.C.A. 542], *Schmitt* v. *Northern Counties Land & Cattle Co.*, 108 Cal.App. 688 [292 P. 173], and *Hollywood Cleaning & P. Co.* v. *Hollywood Laundry Service*, 217 Cal. 124 [17 P.2d 709], but as above stated each case must be decided upon its own peculiar circumstances, and those cases did not involve the facts here considered.

■ In addition to the findings hereinabove mentioned,

the court found that plaintiff made small loans, and was in active competition with national banks and used its moneyed capital for that purpose; that the borrower signed an agreement with plaintiff to obtain the money from the Marshall Finance Company, and only funds borrowed from the latter were loaned; that plaintiff was nominally the broker and Marshall Finance Company was nominally the lender but the effect of the arrangement between the two was that plaintiff actually loaned money to the public. These findings are supported by the evidence heretofore discussed and manifestly are in harmony with the major finding that the two corporations were operating as a unit. The activity of one corporation may also be said to be the activity of the other.

Plaintiff argues that in order to authorize the disregard of a corporate entity the evidence must be convincing and satisfactory and that a presumption of separate entity is present. However that may be, such rules are for the guidance of the trier of fact, and the rule on appeal is the same as in other cases; the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence. The same principle is pertinent in analogous instances involving the proof of fraud. (See 12 Cal.Jur. 834.)

For the foregoing reasons the judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Spence, J. pro tem., concurred.

Traynor, J., did not participate herein.