[Civ. No. 18920.   First Dist., Div. Two.   Dec. 30, 1960.]

CLAREMONT PRESS PUBLISHING COMPANY, INC. (a Corporation), Respondent, v. DONALD ARGEE BARKSDALE, Appellant.

814

Schofield, Hanson, Bridgett, Marcus & Jenkins and Arthur T. Bridgett for Appellant.

W. M. Pinney, Jr., for Respondent.

DRAPER, J.—Defendant appeals from a judgment against him "individually, and doing business as Bay Area Publishing Company, a corporation, and Bay Area Journal, an association," for $7,207 plus interest. Trial was to the court sitting without a jury.

In the late summer of 1952, defendant and Herman Hill, who was joined as a defendant but as to whom the action was dismissed before trial, discussed publication of a weekly newspaper. In July or August, defendant and Hill talked to De Menezes, president of plaintiff corporation, about his printing the proposed paper. De Menezes suggested that $10,000 to $20,000 would be required as capital. Defendant said that he was financially responsible, owned an ice cream distributing business, an apartment house, and was a "disc jockey." De Menezes testified that defendant said "I have never defaulted on a debt, have a good credit rating and will be financially responsible for this publication." Plaintiff printed the paper, which was called the Bay Area Journal. The first issue was published September 19. On October 14, Bay Area Publishing Company filed articles of incorporation, listing its first directors as defendant, Hill and another. There is no evidence that Bay Area Journal was ever transferred to the corporation. The corporation applied to the Division of Corporations on December 5, 1952, for permit to issue stock. The application was not pursued, and on April 17, 1953, the division declared it abandoned.

No stock was ever issued by the corporation. By checks dated September 6, 19 and 20, 1952 (before incorporation) defendant advanced $3,500 to the venture. Of this amount, only $500 was a direct contribution to capital. The remaining $3,000 was listed in corporation statements as "Note Payable." Although defendant denies ever actually receiving such note, there is no question that this amount was but a loan. In December 1952, notes of the corporation aggregating $2,000 were delivered to plaintiff. In May 1953, plaintiff threatened to cease printing the paper unless a substantial payment on its account was made. Defendant then gave plaintiff his personal check for $1,000. At about the same time, defendant advanced a like amount to the newspaper for payment to plaintiff. He received a note of the corporation (Bay Area Publishing Company) for $2,000 to cover these advances. After May 1953, duplicate copies of plaintiff's bills to Bay Area Journal were sent to defendant. There is testimony that this was done at defendant's request. In

October 1953, defendant sold "all my right, title, interest and shares of stock, if any, in the Bay Area Publishing Corporation and Bay Area Journal" to one Webb. At that time, $7,207 was due to plaintiff. Webb continued publication until February 1954, when the venture was abandoned.

The court found that defendant and Hill were "partners and associates" doing business as Bay Area Journal and as Bay Area Publishing Company, a corporation. It held defendant personally liable for the indebtedness to plaintiff.

Defendant contends that the trial court erred in disregarding the corporate entity and holding him personally liable. He relies upon the established rule that the *alter ego* doctrine applies only when (1) the individual not only influences and governs the corporation, but there "is such a unity of interest and ownership that the individuality, or separateness, of the . . . person and corporation have ceased"; and (2) "that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice" (*Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 P. 673]).

Within this rule, the conditions under which the corporate entity may be disregarded vary according to the circumstances of each case (*Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]). Failure to issue stock, although not conclusive evidence, is an indication that the operators of a purported corporation are in fact doing business as individuals (*Automotriz etc. De California* v. *Resnick, supra*; *Geisenhoff* v. *Mabrey*, 58 Cal.App.2d 481 [137 P.2d 36]; *Marr* v. *Postal Union Life Ins. Co.*, 40 Cal.App.2d 673, 682 [105 P.2d 649]). Here, no stock of the corporation ever was issued. Although application for a permit to issue stock was filed, it was abandoned.

Also "[T]he attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts" (Ballantine, Corporations, 302, 303; see also *Automotriz etc. De California* v. *Resnick, supra*, 47 Cal.2d 792, 797, and cases there cited). Here only $500 was contributed as capital to a venture which incurred costs of $650 to $1,000 per week. The other advances of defendant were but loans, made without agreement to subordinate them to the claims of other creditors. Defendant and Hill had been advised that at least

$10,000 was required as capital. Less than two months after publication began, a balance sheet showed a net worth of minus $1,800, despite the fact that the paper had the advantage of extensive political advertising in this period preceding the 1952 elections.

There is also evidence that defendant and Hill fully controlled the business, with defendant, during his absences from California, acting through his attorney. The fact that defendant ultimately sold his interest in the business without ever having secured a permit to issue its stock is a factor indicating his own disregard of the corporate existence. There is also evidence, although contradicted by defendant, that he agreed to be responsible for the paper's debts.

Whether the facts are sufficient to warrant disregard of the corporate entity is largely a question for the trial court, and its determination will not be overturned if supported by substantial evidence (*H.A.S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518, 523 [133 P.2d 391, 145 A.L.R. 349]; *Stark* v. *Coker,* 20 Cal.2d 839, 846 [129 P.2d 390]). While we might well have reached a different conclusion if sitting in the trial court, we are satisfied that the evidence is sufficient to sustain the conclusion of the trial court that there was such a unity of interest and ownership that the individuality of the corporation, as distinct from defendant and Hill, had ceased.

Defendant, however, argues that there is no evidence establishing the second element: that treating the corporation as a separate entity would "sanction a fraud or promote injustice." The court expressly found that defendant was not guilty of fraud. But the very case on which defendant relies makes clear that actual fraud need not be shown. It is sufficient that refusal to recognize unity of corporation and individual "will bring about inequitable results" (*Minifie* v. *Rowley, supra,* 187 Cal. 481, 488). All that is required is a showing that it would be unjust to persist in recognition of the separate entity of the corporation (*Wenban Estate, Inc.* v. *Hewlett,* 193 Cal. 675, 698 [227 P. 723]; *Taylor* v. *Newton,* 117 Cal.App.2d 752, 759, 760 [257 P.2d 68]). To recognize the separate entity of the corporation here would permit defendant and Hill to secure for their venture the benefit of plaintiff's printing services without liability therefor. This is enough to meet the test.

It could be argued that plaintiff recognized the separate corporate entity by accepting notes of the corporation.

But the testimony of plaintiff's president and the fact that defendant after that time paid personal funds directly to plaintiff on account of the business debt could be deemed by the trial court to negate this apparent waiver of the present claim.

Defendant also argues that the trial court erred in admitting testimony of a deputy commissioner of corporations as to the amount of capital required by the department before it will issue a permit for public sale. No public sale is here involved and the evidence is not relevant. However, since the case was tried to the court without a jury, it will not be presumed that the evidence was relied on by the court in reaching its decision. The record indicates no such reliance, and the error therefore is not prejudicial (*White* v. *White*, 82 Cal. 427, 452 [23 P. 276, 7 L.R.A. 799] ; *Estate of Clark*, 93 Cal. App.2d 110, 116 [208 P.2d 737] ; *Nason* v. *Leth-Nissen*, 82 Cal.App.2d 70, 74 [185 P.2d 880] ; *Joint Highway Dist. No. 9* v. *Ocean Shore R.R. Co.*, 128 Cal.App. 743, 765 [18 P.2d 413] ; *Stewart* v. *Douglass*, 9 Cal.App. 712, 715 [100 P. 711]). It should be noted that since we do not presume lack of reliance, this application of the rule is not in conflict with the opinion of the Supreme Court on denial of hearing in *C. O. Bashaw Co.* v. *Wood & Stevens, Inc.*, 72 Cal.App. 94, 101 [236 P. 346].

Finally, defendant asserts error in the allowance of interest. But defendant received copies of each bill of plaintiff from May 1953, and signed the purported corporate resolution of October 6, 1953, acknowledging about $7,000 to be due. The transcript indicates that the case was tried without question as to the amount of plaintiff's claim, but solely on the issue of whether defendant was chargeable with that amount. Thus interest was properly awarded (*Courteney* v. *Standard Box Co.*, 16 Cal.App. 600, 614-615 [117 P. 778] ; *Hanlon Drydock etc. Co.* v. *G. W. McNear, Inc.*, 70 Cal.App. 204, 221-222 [232 P. 1002]).

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied January 27, 1961, and appellant's petition for a hearing by the Supreme Court was denied February 21, 1961.