[Civ. No. 19308. First Dist., Div. Two. Mar. 13, 1961.]

STANLEY M. MacPHERSON et al., Appellants, v.
C. H. ECCLESTON et al., Respondents.

Barnett & Wood and Edmund S. Barnett for Appellants.

Byers, Howell & Elson, Fred K. Howell, Jr., Henry M. Elson, Holmdahl & Fletcher, C. E. Fletcher, Orr, Heuring & Wendel, Donn L. Black, Donahue, Richards & Gallagher, George E. Thomas and Thomas Schneider for Respondents.

DRAPER, J.—Plaintiffs appeal from judgment in favor of all defendants in this action for injunction and for damages. The case was tried to the court sitting without a jury.

Defendants C. H. and Ethel B. Eccleston sold land to plaintiffs, knowing that they planned to construct a service station thereon. The deposit receipt, dated February 1, 1955, contained an agreement by the Ecclestons that other properties owned by them "in the immediate area" would not for 20 years be used for operation of a service station. Sellers also agreed that if they sold any such other properties, they would do so only upon a covenant restricting use thereof to purposes other than operation of a service station. Plaintiffs built and operated a service station on the land purchased from the Ecclestons. At the date of the deposit receipt, Ecclestons owned land adjoining that sold to plaintiffs. Other nearby land was owned by El Dorado Associates, Inc., a corporation, whose stock was almost wholly owned by defendants Eccleston. In August, 1957, El Dorado conveyed its land to Steffensen. In May, 1958, Steffensen leased a portion of this area to Standard Oil Company as the site for a service station. While the record is not clear, it is apparent that the Standard Oil site is quite close to the station of plaintiffs.

Plaintiffs brought this action against Ecclestons, El Dorado, Steffensen and Standard Oil, seeking to enjoin construction of the Standard station and praying for damages. The complaint is in three counts. It is alleged that defendants Eccleston, when they sold to plaintiffs, owned the property now leased to Standard Oil, that El Dorado is but the *alter ego* of the Ecclestons, and that all defendants conspired to violate the restrictive provisions of the sale from the Ecclestons to plaintiffs. Judgment was that plaintiffs take nothing.

The evidence establishes that at the time of the sale to

plaintiffs, defendant C. H. Eccleston owned 485 shares of El Dorado. The remaining 15 shares were owned by his son. The father was president and the son vice-president of the corporation. Plaintiffs introduced evidence that defendant C. H. Eccleston had, before the sale to plaintiffs, stated that "I," or "we" owned the lands now shown to have been those of El Dorado. Eccleston denied such statements. There was evidence that El Dorado was incorporated in 1947 and then had 19 or 20 stockholders. Although defendant Eccleston and his son had acquired all the stock by the time of the sale of the Eccleston land to plaintiffs, there was no commingling of funds of the corporation and the Ecclestons, a separate bank account was maintained by the corporation, formal meetings of the corporation were held and detailed corporate records maintained.

The corporate entity may be disregarded only when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" (*Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042]; *Minifie* v. *Rowley*, 187 Cal. 481, 487 [202 P. 673]). The burden of proving such facts is upon plaintiff (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service, Inc.*, 217 Cal. 124, 128 [17 P.2d 709]). This fact issue is particularly within the province of the trial court, and its determination will not be disturbed if supported by substantial evidence (*H.A.S. Loan Service, Inc.* v. *McColgan*, 21 Cal.2d 518, 523 [133 P.2d 391, 145 A.L.R. 349]; *Stark* v. *Coker*, 20 Cal.2d 839, 846 [129 P.2d 390]). Here the only uncontradicted fact bearing upon the *alter ego* theory is that Eccleston owned substantially all the stock of El Dorado. This fact, standing alone, is not enough to require disregard of the separate corporate entity (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service, supra*, p. 129). It follows that the findings against disregard of the corporate entity must be sustained.

Plaintiffs, however, point to the memorandum decision in which the trial court stated that the *alter ego* theory had not been established by plaintiffs, and that therefore it must grant the several motions to strike "the parol evidence" introduced subject to such motions. The reference apparently is to testimony that defendant Eccleston represented that he or "we" owned the El Dorado land. The record shows that such evidence was admitted solely for its bearing on the *alter ego* theory. It might have some relevancy to that issue,

since it could tend to show that Eccleston considered the corporation and himself as one. But it seems clear that the court considered this evidence in determining that *alter ego* had not been established. Once that issue was determined against plaintiffs, no possible relevancy of this evidence remained. ■ While the phrase "in the immediate area" is ambiguous, it refers only to property owned by the Ecclestons. Once it was determined that the Standard Oil property had not been owned by the Ecclestons, either directly or through El Dorado as their *alter ego,* there was no need to resolve this ambiguity.

■ Plaintiffs argue extensively that Eccleston's asserted statements are admissible, apparently apart from the *alter ego* theory. This view could be correct only if a cause of action against defendants Eccleston for fraudulent misrepresentation had been pleaded or urged. But no such issue was pleaded, nor was it urged in the trial court or here. In fact, objection to this testimony was made upon the ground that plaintiffs were seeking to inject a new issue, that of fraudulent misrepresentation, which was not pleaded. Plaintiffs' counsel answered "I certainly am not," and stated that he intended only to prove that "C. H. Eccleston and El Dorado Associates were one and the same persons for the purposes of this complaint." It follows that there was no prejudice to plaintiffs in the order striking this evidence after it had been considered for the slight bearing it had upon the *alter ego* issue.

■ The restriction upon future sales applies only to sales of lands of defendants Eccleston. Since the court, on substantial evidence, refused to disregard the separate entities of the Ecclestons and El Dorado, there is no possible basis for applying the restriction to lands owned by El Dorado in February 1955. It follows that plaintiffs had no claim against any defendant upon the complaint now before us.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.