[Civ. No. 24950. Second Dist., Div. Two. Oct. 3, 1961.]

ALEXANDER KAZUTOFF et al., Appellants, v. JOE LEE WAHLSTROM et al., Respondents.

Huston T. Carlyle for Appellants.

Pratte & Suckling and Scott Simon for Respondents.

McMURRAY, J. pro tem.*—Mr. and Mrs. Kazutoff, as plaintiffs, sought recovery of judgment against Joe Lee Wahlstrom and Drew Lee Wahlstrom individually and as co-partners of Wahlstrom Bros. Plaintiffs had contracted with Wahlstrom Bros. Inc., for the construction of a swimming pool which they felt was unsatisfactorily built. In their action plaintiffs alleged a cause of action for rescission, an action for breach of contract, an action in equity to pierce the corporate veil of the corporation known as Wahlstrom Bros. Inc., and a cause of action on a count of money had and received. After court trial it was found that plaintiffs had not sustained the burden of proof essential to set aside the corporate existence and treat the defendants as the *alter ego* of the corporation, and it was further held that defendants Wahlstrom never became indebted to plaintiffs for any money had and received; that any written agreement entered into was executed between plaintiffs and the corporation and that defendants were not liable for any contracts entered into by the corporation. Plaintiffs appeal from the judgment entered in accordance with those findings.

On this appeal it is urged that the trial court erred in its determination that the appellants did not prove facts sufficient to justify a disregard of the corporate existence of Wahlstrom Bros. Inc., and also that the trial court erred in not determining that respondents are estopped from asserting that the corporate entity of Wahlstrom Bros. Inc., was the entity contracting with appellants. The record herein is replete with conflicts in the evidence but construing it most favorably to the respondents, as we must, it appears that in 1941 respondents commenced a general partnership as general contractors under the name of Wahlstrom Bros., and conducted a relatively successful swimming pool construction business until 1956. On February 21 of that year articles of incorporation were filed with the Secretary of State of the state of California for a corporation known as Wahlstrom Bros., Inc., and on November 29, 1956, application was made for a permit to issue stock. The permit was issued in December of 1956 and thereafter stock in the newly formed

*Assigned by Chairman of Judicial Council.

corporation was issued in equal shares to the respondent brothers. The partnership transferred most of its assets to the corporation but retained certain real property which it leased to Wahlstrom Bros., Inc., and to others. In June of 1956 a general contracting license was issued to the corporation.

Following the formation of the corporation stockholders' and directors' meetings were held, a separate bookkeeping system was established, new stationery was ordered and rubber stamps bearing the word "Inc." were purchased in order to alter the old stationery. Testimony was also introduced to the effect that certain signs were altered to reflect the incorporation and that telephone numbers were changed. A general manager was hired and exercised day to day decisions and determined the primary economic policy of the corporation. The respondents withdrew from the corporate management in a large degree. Separate corporations were formed to act as sales agents for Wahlstrom Bros., Inc., which corporations were set up on a territorial basis. The respondents testified that the corporation was formed because they had been devoting long hours to the management of the partnership and, since neither was in good health, they were advised by their doctors to slow down. Acting upon advice of counsel respondents concluded that a corporate structure would be more desirable in the event that anything should happen to them. Because of the burgeoning of the swimming pool industry in Southern California an expansion program was planned and entered into and the respondents testified they further believed that some tax advantage would result from incorporation. Having expanded too fast, Wahlstrom Bros., Inc., filed a petition in bankruptcy on August 21, 1958, and a discharge was issued after proceedings had in September of 1958. All of the available assets of the corporation were liquidated for the benefit of creditors. The partnership, however, continued in existence mainly for the purpose of leasing the respondents' real and personal property.

The agreement to construct the subject swimming pool on appellants' premises was entered into about August 16, 1956. Across the top of the contract were the words, "Wahlstrom Bros., Inc." The corporation undertook to construct the swimming pool, did so, and thereafter certain disputes arose concerning the quality of construction, culminating in the filing of an action by appellants against Wahlstrom Bros., Inc.,

which action was subsequently abandoned, and on October 24, 1958, appellants filed the instant action.

In determining whether or not the trial court erred in its determination that appellants did not prove facts sufficient to justify the disregard of the corporate existence of Wahlstrom Bros., Inc., "[t]he conditions under which the corporate entity may be disregarded, or the corporation be regarded as the *alter ego* of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance. The basic rule was recently stated by this court in *Watson* v. *Commonwealth Ins. Co.*, 8 Cal.2d 61, 68 [63 P.2d 295] 'The two requirements are that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and that adherence to the fiction of separate existence would, under the circumstances, permit fraud or injustice. On the second score it is sufficient that it appear that recognition of the acts as those of a corporation only will produce inequitable results.' " (*Stark* v. *Coker*, 20 Cal.2d 839, 846 [129 P.2d 390].) That such a determination is within the province of the trial court has been held in *H.A.S. Loan Service* v. *McColgan* (1943), 21 Cal.2d 518, 523 [133 P.2d 391, 145 A.L.R. 349]; *MacPherson* v. *Eccleston* (1961), 190 Cal.App.2d 24 [11 Cal. Rptr. 671]; *Claremont Press Pub. Co.* v. *Barksdale* (1960), 187 Cal.App.2d 813, 817 [10 Cal.Rptr. 214]. Furthermore, while the finding of the trial court must be based on convincing, satisfactory evidence and a presumption of separate entity is present, nevertheless such rules are for the guidance of the trier of fact and the rule on appeal is the same as in other cases. The conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence. (*H.A.S. Loan Service* v. *McColgan, supra,* at p. 524.) The record on this appeal shows that the decision of the respondents to incorporate was based upon valid considerations with no implications of fraud or any attempt to avoid liability. The organization and character of the business were substantially altered after the incorporation. The fact that appellants testified that they did not know or care about the legal organization they were contracting with but merely relied upon the integrity and reputation of a known pool builder, all support the trial court's findings in this matter. Appel-

lants seek to rely on *Gordon* v. *Aztec Brewing Co.* (1949), 33 Cal.2d 514 [203 P.2d 522], which, they urge, bears an amazing likeness to the instant case. The fact is that there the trial court found that under the evidence a partnership should be considered as the *alter ego* of the corporation and under the facts there presented it was shown that there was no change in the management after the corporation was changed to a partnership. Applying the rules above stated to the facts set forth in the *Gordon* case, it is difficult to understand how appellants find solace in that case.

The second point urged by appellants—that respondents are estopped from asserting the corporate entity of Wahlstrom Bros., Inc.,—is bottomed on an argument that by failing to list as an asset in the bankruptcy proceedings a balance of $186.25 still owing to Wahlstrom Bros., Inc., by appellants on account of the agreed contract price of the swimming pool, respondents are now estopped from asserting that the corporation dealt with the appellants as a corporate entity. Appellants cite the case of *United States* v. *Munsingwear, Inc.* (1950), 340 U.S. 36 [71 S.Ct. 104, 95 L.Ed. 36], to support this proposition. That case was one wherein the doctrine of res judicata was applied under the facts there revealed and it is said at page 38: ''The general principle . . . is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery cannot be disputed in a subsequent suit between the same parties or privies.'' This is a fair statement of the law but under the facts in this appeal it is inapposite. The appellant further cites *Pindel* v. *Holgate* (9th C.C.A. 1915), 221 F. 342 [137 C.C.A. 158, Ann.Cas. 1916C 983], to the effect that a voluntary bankrupt by failing to claim any counterclaim or other affirmative relief then existing in his bankruptcy proceedings either in his schedules or failing to claim any unremitted claims or choses in action of any kind against any person is thereafter estopped from making any such claim in any other judicial proceedings. This certainly is not the case before this court. No claim is advanced by Wahlstrom Bros., Inc., at this time. Appellants' main argument boils down to the proposition that by not listing the Kazutoff obligation in its schedule the corporation thereby saddled the individual brothers with a corporate obligation. ■■ The cases they cite are not determinative of this point and, indeed, it is said that '' [f]iling a schedule is in no proper sense res judicata either as to creditors or the bankrupt. It is an

ex parte act on the part of the bankrupt which binds him as an admission unless it is amended. It has no force in another and independent proceeding, other than as evidence. The scheduling, by a member of a partnership, in a voluntary proceeding in bankruptcy of an alleged claim against the partnership as his debt does not, on the principle of res judicata, establish that such is the fact, even in that proceeding.'' (6 Am.Jur., Bankruptcy, 780.) It is further said in the same work that '' [t]he failure of the bankrupt to duly schedule a debt with the name of the creditor, if known to the bankrupt does not necessarily result in excepting the debt from discharge. The exception of a debt not duly scheduled depends upon the absence of notice or knowledge on the part of the creditor of the proceeding in bankruptcy.'' (6 Am.Jur., Bankruptcy, 1015.) In record before us it appears that appellants' counsel had notice of the bankruptcy before the filing and could not have been misled by the failure to schedule the claim against the appellants which might well have resulted from inadvertence or honest mistake. Certainly the California courts, in dealing with the doctrine of res judicata, have said that three questions are pertinent: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with the party to the prior adjudication? (*Bernhard* v. *Bank of America* (1942), 19 Cal.2d 807 [122 P.2d 892]; *Dillard* v. *McKnight* (1949), 34 Cal.2d 209 [209 P.2d 387, 11 A.L.R.2d 835]; *Stafford* v. *Yerge* (1954), 129 Cal.App.2d 165 [276 P.2d 649]; *Hatch* v. *Bank of America* (1960), 182 Cal.App.2d 206 [5 Cal.Rptr. 875].) In the instant case, none of the questions asked can be answered in the affirmative since it was never established that respondents were parties or privies to the bankruptcy proceedings. It is apparent that the issues decided in the bankruptcy hearing are different and distinct from the matters in the instant action and appellants have failed to establish that respondents were proper or necessary parties or privies to that prior determination.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.