[Civ. No. 332. Fifth Dist. June 23, 1964.]

RICHARD PRATT, Plaintiff and Appellant, v. COAST TRUCKING, INC., et al., Defendants and Respondents.

Guy Knupp, Jr., for Plaintiff and Appellant.

Richard E. Tuttle, Mary Moran Pajalich and Donald B. Day as Amici Curiae on behalf of Plaintiff and Appellant.

Russell & Shureman, Theodore W. Russell and Orville A. Schulenberg for Defendants and Respondents.

CONLEY, P. J.—This case tests the relationship and the relative jurisdiction of the Public Utilities Commission of the State of California and the courts of this state other than the Supreme Court.

The appeal is from a judgment of the superior court in favor of the defendants. The plaintiff, at the instance and direction of the Public Utilities Commission, brought action against the defendants for a balance claimed to be due as full charges for prime hauling at the rate prescribed by the commission; the defendants take the position that a prior hearing held by the Public Utilities Commission at which that body found that Coast Trucking, Inc., was the *alter ego* of the lumber shipper, Baugh Lumber Sales Co., Inc., and that

the existence of Coast Trucking, Inc., was a mere device to enable the Baugh Lumber Sales Co., Inc., to secure lower transportation rates for their product was not binding upon the court; on the other hand, the Public Utilities Commission as amicus curiae contends in this court that those matters were wholly within the competence of the commission, that they were decided by it, that the Supreme Court was not asked to review the commission's order, and that the superior court therefore had no jurisdiction to determine such questions contrary to the findings and order of the commission.

The complaint alleged that plaintiff is an individual engaged in business under the name of Pratt Livestock & General Transportation as a highway permit carrier with his principal place of business in Tulare County; that from time to time between the first day of December, 1959, and the 29th day of April, 1961, he engaged as a prime carrier in the carriage of commodities on behalf of the defendants as shippers pursuant to which there became due and payable to him at the rates prescribed by the commission the sum of $42,113.99; that the defendants paid plaintiff the sum of $33,249 leaving a balance due of $8,864.99. It is further alleged: "That the defendant, Coast Trucking, Inc. was not in fact a prime hauler in good faith and with respect to such hauling was not capable of doing any hauling of the commodities which were so carried by the plaintiff for want of necessary equipment therefore, and that said defendant Coast Trucking, Inc. was in fact a device contrived by the stockholders aforesaid whereby the defendant Baugh Lumber Sales Co., Inc. as shipper, might receive transportation of property at rates less than those prescribed by the Public Utilities Commission, and whereby said defendant Baugh Lumber Sales Co., Inc., has received from plaintiff the transportation of property at such lesser rates, in the following manner: that defendant Coast Trucking, Inc. as purported prime carrier for defendant Baugh Lumber Sales Co., Inc., as shipper paid to plaintiff for hauling and and [sic] carriage of goods at a rate which would have been applicable had the plaintiff actually been engaged as a true sub-hauler under defendant Coast Trucking, Inc. as prime hauler, whereas plaintiff was in fact the prime hauler of such goods for Baugh Lumber Sales Co., Inc., as shipper; that the amounts so paid by the defendants to the plaintiff at sub-hauler's rates, between December 1, 1959 and April 29, 1961 were less than the amounts to which plaintiff was entitled as in truth and in

fact a prime hauler in the sum of $8,864.99 and the defendant and each of them therefore became and are thereby indebted to the plaintiff in the sum of $8,864.99."

The answer of Coast Trucking, Inc., a corporation, besides denying that any sum is due, pleads section 339, subdivision 1, of the Code of Civil Procedure as a bar to the action and urges a counterclaim under which it claims an offset against the plaintiff because of a written contract dated March 30, 1959. In its separate answer, Baugh Lumber Sales Co., Inc., denies that any amount is due to the plaintiff, and also asserts the applicability of section 339, subdivision 1, of the Code of Civil Procedure. The special defenses of the statute of limitations were disposed of by stipulation in the court below.

The court failed to pass upon the counterclaim; as to other issues it held as follows:

"It is true that:

"1. Defendant Coast Trucking, Inc. was not at any time involved herein in *alter ego* of defendant Baugh Lumber Sales Co., Inc.

"2. At no time involved herein was defendant Coast Trucking, Inc. used as a 'device' to obtain transportation for any property between points within this state at rates less than the minimum rates approved by the Public Utilities Commission within the meaning of Public Utilities Code section 3668.

"3. No transportation of property between points within this state involved in the within action was obtained by defendant Baugh Lumber Sales Co., Inc. at less than the minimum rates as prescribed by the Public Utilities Commission.

"4. At all times involved herein defendant Coast Trucking, Inc. participated in the transportation involved herein of property between points within this state as 'prime carrier' and not as a shipper, and plaintiff participated in such transportation as a subhauler.

"5. Plaintiff did not provide transportation for the defendant Baugh Lumber Sales Co., Inc.

"6. Plaintiff has been paid for all services and facilities which plaintiff provided to the defendant Coast Trucking, Inc. between December 1, 1959, and April 29, 1960, both inclusive."

The judgment is for defendants.

The appeal is based upon the assertion that the evidence does not warrant the judgment. But strangely enough, the

findings of the commission that Coast Trucking, Inc., and Baugh Lumber Sales Co., Inc., are one and the same from the standpoint of transportation, and that Baugh Lumber Sales Co., Inc., used the name of Coast Trucking, Inc., as a mere device to secure a financial advantage in transportation were not relied upon at the trial or even mentioned, by appellant. This was an inscrutable failure to insist upon the best point that he had.

The Public Utilities Commission did not participate in the trial of the case, but it was granted permission to file an amicus curiae brief in this court. Consequently, we are confronted by the rule that an amicus curiae must accept the case as it finds it and that a "friend of the court" cannot launch out upon a juridical expedition of its own unrelated to the actual appellate record. In *Eggert* v. *Pacific States S. & L. Co.*, 57 Cal.App.2d 239, 251 [136 P.2d 822], the Building and Loan Commissioner intervened at the trial level but failed to appeal from the judgment. Thereafter, the commissioner was permitted to file a brief on appeal as amicus curiae; the opinion thus discusses the position of the commissioner: "By this brief he urges various propositions for the modification of the judgment which are not presented by either plaintiffs (respondents) or defendant (appellant). These questions will not be considered by us for the reason that the rule is universally recognized that an appellate court will consider only those questions properly raised by the appealing parties. Amicus curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered [citations]."

In a 1960 case decided by the United States Supreme Court, *Knetsch* v. *United States*, 364 U.S. 361 [81 S.Ct. 132, 5 L.Ed.2d 128] it was said: "Some point is made in an *amicus curiae* brief of the fact that Knetsch in entering into these annuity agreements relied on individual ruling letters issued by the Commissioner to other taxpayers. This argument has never been advanced by petitioners in this case. Accordingly, we have no reason to pass on it."

A compelling answer to the quandary is that as the court below had the duty to take judicial notice of the files and the order of the commission (59 Opinions of the Public Utilities Commission, pp. 339-343) they may be considered as a part of the record on appeal by this court. In *Chas. L. Harney, Inc.* v. *State of California*, 217 Cal.App.2d 77 [31 Cal.Rptr.

524], cases are summarized in which judicial notice was taken of the records and files, as well as the rules and regulations of similar state agencies. At pages 85-86, it is said: "At the outset we observe that the trial court and this court have the power to take judicial notice of the official records and files of the State Board of Control and of the office of the State Controller. (Code Civ. Proc. § 1875, subd. 3; *Dittus* v. *Cranston* (1959) 53 Cal.2d 284, 286 [1 Cal.Rptr. 327, 347 P.2d 671] (records of State Board of Control); *Pearson* v. *State Social Welfare Board* (1960) 54 Cal.2d 184, 210 [5 Cal.Rptr. 553, 353 P.2d 33] (records of Department of Social Welfare and Board of Social Welfare); *Department of Mental Hygiene* v. *Rosse* (1960) 187 Cal.App.2d 283, 287-288 [9 Cal.Rptr. 589] (official records of Department of Mental Hygiene); *Watson* v. *Los Altos School Dist.* (1957) 149 Cal. App.2d 768, 772-773 [308 P.2d 872] (records of State Board of Education and county planning commission); *Adoption of McDonnell* (1947) 77 Cal.App.2d 805, 808 [176 P.2d 778] (official files of Department of Social Welfare); *McPheeters* v. *Board of Medical Examiners* (1946) 74 Cal.App.2d 46, 47 [168 P.2d 65] (records of said Board); see also *Livermore* v. *Beal* (1937) 18 Cal.App.2d 535, 540-541 [64 P.2d 987].) . . .

" . . . The fact that the instant record does not affirmatively show that the trial court took judicial notice of these records in arriving at its decision does not affect or impair our power to do so. (*Taliaferro* v. *County of Contra Costa* (1960) 182 Cal.App.2d 587, 592 [6 Cal.Rptr. 231].) . . . Whether or not the court below exercised such power, we propose to do so.

" 'That matters judicially noticed may be considered in construing the pleadings is well settled.' [Citations.] "

The courts have also taken judicial notice of city records of an election (*Chambers* v. *Ashley*, 33 Cal.App.2d 390, 391 [91 P.2d 932]; proceedings of the Judicial Council (*People* v. *Cahan*, 141 Cal.App.2d 891, 899 [297 P.2d 715]); and the reports of the Committee on Un-American Activities (*Wilson* v. *Loew's Inc.*, 142 Cal.App.2d 183, 188 [298 P.2d 152]). In almost all of these cases certified copies of the appropriate documents or files were introduced in the court below and were thus a part of the record on appeal. However, in *Adoption of McDonnell*, 77 Cal.App.2d 805 [176 P.2d 778], the material was presented to the appellate court in the brief of the Attorney General as amicus curiae on behalf of appellant at the request of the State Department of Social Welfare.

Attached to the brief was a blank consent to adoption form. The Attorney General stated that it was signed by the McDonnells and that it consented to the adoption of their son by the Holts. He also stated that the word "Void" was written across the face of the consent and that it is in the files of the Department of Social Welfare. At page 808 of the opinion, after reciting these matters, the appellate court said: "For the purpose of this opinion we will assume these facts to be true as we can take judicial notice of the official files of a state department, though in this case there seems to be no good reason why we should not have been informed of the contents by certified copies in the record."

The commission, of course, has the foundation of its authority in the Constitution of the State of California. (Cal. Const., art. XII, §§ 22 and 23.) These provisions are observed in section 1759 of the Public Utilities Code which reads: "No court of this State, except the Supreme Court to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, except that the writ of mandamus shall lie from the Supreme Court to the commission in all proper cases."

*Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, 659 [137 P. 119, Ann. Cas. 1915C 822, 50 L.R.A. N.S. 652], recites that the Constitution of this state has created a commission having control of public utilities, and has authorized the Legislature to confer upon that commission such powers as it may see fit. Thus, says the court, " . . . the state of California has decreed that in all matters touching public utilities the voice of the legislature shall be the supreme law of the land." (P. 658.) The power vested in the Legislature authorizes it to limit or destroy the jurisdiction of the courts with respect to such matters or to confer upon the courts such jurisdiction as it sees fit.

In *Truck Owners & Shippers, Inc.* v. *Superior Court,* 194 Cal. 146, at page 152 [228 P. 19], the court said: "It is no longer a subject of controversy that by reason of the provisions of section 67 of the Public Utilities Act* the superior court has no jurisdiction when the commission has acted to 'review, reverse, correct or annul any order or decision of

*Now section 1759 of the Public Utilities Code.

the commission.' Jurisdiction in such matters is exclusively in the supreme court [citation].''

*People* v. *Hadley,* 66 Cal.App. 370 [226 P. 836], dealt with an appeal taken by the People from a judgment in favor of a defendant on a demurrer to an information which charged him with the violation of an order of the Railroad Commission. The defendant had abandoned an automobile stage line, then resumed operations in violation of an order of the commission. Although the judgment was affirmed on another unrelated ground, as to the conclusive effect of the commission's prior order, the court said, at pages 373-374: ''As heretofore stated, the commission's findings of facts were that respondent discontinued service and operation in the year 1918, and that he did not resume operations until some time in the month of March, 1923. The supreme court of this state has repeatedly held, in accordance with the provisions of sections 1 and 67 of the Public Utilities Act (Stats. 1911 [Ex.Sess.], p. 18), that the findings of the commission on questions of fact are final and not subject to review. [Citations.] There can be no question, therefore, but that the finding by the railroad commission as to the abandonment of the right to operate a stage line and the fact that operations were not resumed until some time in the month of March, 1923 must be accepted as final; such conclusion being one that cannot be inquired into by this court.''

Continuing the discussion the court said, at page 375: ''It must therefore be accepted as the settled law of this state that no court other than the Supreme Court has jurisdiction to review, reverse, correct or annul any decision or order of the railroad commission. Even though the order by the railroad commission be palpably erroneous in point of law, until some order by the Supreme Court may be issued to the contrary, the original order of the commission must stand as a proper and legal order in the premises. No court, other than the Supreme Court, may lawfully disregard it. Such being the state of the law, it would follow that, as is provided by the act itself, the only relief which the aggrieved party may have from such an order is by or through a writ issued by the Supreme Court.''

In *Wallace Ranch Water Co.* v. *Foothill Ditch Co.,* 5 Cal.2d 103 [53 P.2d 929], a mutual water company sued a public utility to quiet title to water rights and a one-third interest and easement in the ditch through which the water was transported. The Railroad Commission (predecessor of the

Public Utilities Commission) with knowledge of the claims of the plaintiff, had made two orders fixing rates for the service rendered by the defendant public utility to the plaintiff mutual water company. The trial court made findings which purported to fix rates to be paid by plaintiff to defendant for the service rendered and purported to find that the commission was without jurisdiction to make its prior orders. The Supreme Court struck those portions of the court's findings, and, at page 121, said: "It does not appear that these [the commission's] orders are void on the face thereof. Under such circumstances, the trial court had no jurisdiction directly or indirectly to overrule an order of the railroad commission. The power to reverse, review, correct or annul orders of that commission rests solely in the Supreme Court (§ 67 of the Public Utilities Act, *supra*) and the superior court is without jurisdiction in the premises."

In *Loustalot* v. *Superior Court,* 30 Cal.2d 905 [186 P.2d 673], one Price had been adjudged in contempt by order of the Industrial Accident Commission of California, and was incarcerated. He applied to the Superior Court of Kern County for a writ of habeas corpus. The sheriff of the county petitioned in prohibition to restrain the superior court from taking any further steps in the proceeding and the writ was granted. Mr. Justice Traynor, in the opinion, reviews the history of the Industrial Accident Commission, and analyzes the provisions of the Labor Code; section 5955 of that code is similar to section 1759 of the Public Utilities Code, except that the former permits review by the District Courts of Appeal as well as by the Supreme Court. At pages 910-912 it is said: "An examination of the legislative history of section 5955 and of the decisions construing the similar section of the Public Utilities Act clearly shows that section 5955 means that superior courts have no jurisdiction to review or otherwise interfere with the operation of any order of the Industrial Accident Commission.

". . . . . . . . . . . . . . . .

"The foregoing legislative history shows without question that section 67 of the Public Utilities Act provided the model for section 5955 and that the decisions interpreting section 67 are likewise applicable thereto. The construction of section 67 of the Public Utilities Act adopted in the Pacific Telephone case, *supra,* has been followed in subsequent cases. [Citations.] It is thus settled that a superior court has 'no jurisdiction directly or indirectly to overrule an order of the rail-

road commission. The power to reverse, review, correct or annul orders of that commission rests solely in the Supreme Court [citation] and the superior court is without jurisdiction in the premises.' "

The latest case cited by the commission in its brief is *Pacific Tel. & Tel. Co.* v. *Superior Court,* 60 Cal.2d 426 [34 Cal.Rptr. 673, 386 P.2d 233]. The telephone company there sought a writ of prohibition restraining the Superior Court of the City and County of San Francisco from trying an action for damages alleged to have resulted when the company discontinued telephone services to one Sokol. The writ was granted. Pursuant to a prior decision of the Public Utilities Commission providing that a communication utility must discontinue service to a subscriber when it has reasonable cause to believe that the service is being used in violation of law, the company cut off the service of one Sokol. Sokol instituted proceedings before the commission which found that his telephone facilities were not being used for any unlawful purpose, and accordingly his service was restored. The commission also found that the company acted reasonably in disconnecting the telephone facilities. Sokol sued for damages in the superior court on the ground that discontinuance of his service did not accord with any valid order of the commission and that it was in violation of the company's obligations as a public utility. The company's motion for a summary judgment on the ground that the court lacked jurisdiction was denied. On the appeal it was held that the superior court did not have jurisdiction to pass upon the validity or reasonableness of decisions of the Public Utilities Commission. In assuming jurisdiction the court necessarily claimed the power, contrary to law, to review and annul the decisions of the commission. In its review of case law dealing with section 1759, the court said: "The effect of the foregoing is summarized by this court in *Miller* v. *Railroad Com,* 9 Cal.2d 190, 195 [70 P.2d 164, 112 A.L.R. 221], as follows: ' . . . after the commission has assumed jurisdiction over a public utility for the purpose of administering the law applicable to the activities of the utility, the commission has exclusive jurisdiction over the regulation and control of said utility. . . .'

"In *Harmon* v. *Pacific Tel. & Tel. Co.,* 183 Cal.App.2d 1, 3 [6 Cal.Rptr. 542], it was held that the power of the commission with respect to the conditions under which public utilities render their services is subject to review only by the

Supreme Court, in accordance with the applicable sections of the Public Utilities Code.

"The mandate of the Legislature, violated by the superior court in the case at bar, is to place the commission, insofar as the state courts are concerned, in a position where it may not be hampered in the performance of any official act by any court, except to the extent and in the manner specified in the code itself. [Citations.]

"Hence, respondent, when it assumed jurisdiction to review and annul the decisions of the commission here involved, altered the scheme of review established by the Legislature. Respondent was therefore without jurisdiction to pass upon the question here presented."

 The respondents correctly contend that the courts of this state do have jurisdiction under the law to entertain cases relating to the recovery of sums which are due pursuant to rates for transportation (*Gardner* v. *Rich Mfg. Co.,* 68 Cal.App.2d 725 [158 P.2d 23]; *Gardner* v. *Basich Bros. Construction Co.,* 44 Cal.2d 191 [281 P.2d 521]; *Church* v. *Public Utilities,* 51 Cal.2d 399 [333 P.2d 321]). The essential question is not whether the courts have jurisdiction of the case, but whether they have such power as to permit them to ignore a previous decision of the commission relating to transportation; the answer is that the trial courts do not have such right.

 Under our Constitution and laws, the Public Utilities Commission has power to regulate transportation of intrastate shipments, specifically (1) the power to regulate tolls and charges, (2) the power to prevent discrimination, and (3) the power to formulate rules governing the conduct of utilities to the end that efficiency may be procured and the public and utility employees may be accorded desirable safeguards and conveniences. (*East Bay Municipal Utility Dist.* v. *Railroad Com.,* 194 Cal. 603 [229 P. 949].) The function exercised by the commission in an investigatory proceeding is one of regulation and supervision. (*Motor Transit Co.* v. *Railroad Com.,* 189 Cal. 573, 580 [209 P. 586].) The courts in their separate and complementary functions have ample powers of their own, but no sensible person viewing the general situation should for a moment contend that there is an area within which the commission and the courts can legitimately reach exactly opposite and conflicting conclusions on a given set of facts. One or the other body must prevail on any given question, and it appears clear that the elimi-

nation of discrimination between carriers and the prevention of special benefits to favored shippers through ingenious devices to that end are within the exclusive supervision of the Public Utilities Commission.

By no stretch of the imagination can it be said that the findings of the commission that the existence of Coast Trucking, Inc., is a mere device of Baugh Lumber Sales Co., Inc., to gain special advantage, and the contrary findings of the court that Coast Trucking, Inc., is not the *alter ego* and not a mere device of Baugh Lumber Sales Co., Inc., are compatible. The purpose of the investigatory procedure of the commission was to determine whether or not the full rates prescribed by the commission had been paid to Pratt and other individuals involved in that hearing. In order to determine the question it was necessary for the commission to find the status of Coast Trucking, Inc. No direct attack by petition to the Supreme Court having been made after that decision it has long since become final.

*Goodspeed* v. *Great Western Power Co.*, 33 Cal.App.2d 245 [91 P.2d 623, 92 P.2d 410], was an action brought in the superior court by shareholders against a power company and a canal company to recover damages for fraud in the sale of stock. The canal company had organized under the laws of the State of California as a mutual water company and had sold stock as such. After several years of operation, one Sarah E. Ludy filed a complaint before the Railroad Commission against the canal company (one of the defendants in the subsequent fraud case). After a hearing, the commission found that the canal company was not a mutual water company; that it was wholly a creation of the power company and a device by which the latter sought to escape its public obligations. The suit which followed was based on the fraudulent representations that the canal company was a mutual water company. Upon trial, the court found that the canal company was under the complete domination and control of the power company. The findings, therefore, were not in conflict with those of the commission. Nevertheless, the defendants asserted error on appeal. After holding that the finding of fraud had ample support in the record, the court said, at pages 264-265: ''In arriving at a conclusion upon this ground of appeal, we have taken the view that the findings of the commission upon the status of defendant canal company is final and conclusive. . . . We see no reason, however, why a finding of the commission, which has legally and

finally adjudicated one of the issuable facts, should not be used to establish such fact, although it appears that such fact is part of the factual structure of plaintiffs' case involving fraud. It is contended by defendants that the rule is otherwise, and that the *issue of the status* of the canal company must be retried and determined here, irrespective of the previous adjudication of that issue by the commission and the Supreme Court of this state. It is conceded by all parties that the decision of the commission has the effect of a judgment *in rem*, but defendants argue that the instant action is one *in personam*, that therefore the commission's findings cannot be invoked by plaintiffs. Such a rule would, we believe, lead to the utmost confusion. If the judgment of the commission, acting within its jurisdiction, is final, it is final for all purposes and in any character of action or proceeding where the precise matter is again presented for adjudication before any other tribunal, board or commission. So when the parties here went into court they should have proceeded upon the assumption that this issue—the real corporate character of defendant canal company—was no longer open to litigation. The fact that plaintiffs presented evidence on the issue is of no consequence. If the trial court had here found that defendant canal company was not, and never had been a public utility, it would have been our duty to set aside any judgment based thereon, upon the ground that that issue had been conclusively adjudicated to the contrary by the commission. To hold (as defendants would have it) that the canal company was, as against the world, a public utility, but as between these parties it was a *bona fide* mutual water company, would result in the creation of a corporate Janus, —something unknown in law.''

The case of *Thaxter* v. *Finn,* 178 Cal. 270 [173 P. 163], is pertinent. There an injured employee had obtained an award from the commission against his employer, the general contractor of his employer and the insurance carrier of the general contractor. The award was not challenged, either by a petition for rehearing or an application for a statutory review. The general contractor and its insurance carrier refused to comply with the award and a writ of execution issued. The sheriff declined to levy the writ and the claimant sought a writ of mandamus in the Supreme Court to compel its enforcement. At that level the contractor and carrier argued that the commission had no authority to make an award except against the subcontractor who was the im-

mediate employer of the injured claimant. Mandamus was issued to compel enforcement of execution. The Supreme Court stated that while the award would have been annulled by it for want of power in the commission to make it, if proceedings to review the award had been timely instituted, the award was not now subject to attack because no proceedings for a review had been initiated within the period specified in the act. It was held that defendant's contention constituted a collateral attack upon the jurisdiction of the commission as to an award which had become final and binding upon the contractor and carrier when they failed to request a rehearing from the commission and failed to seek a review by the Supreme Court or the District Court of Appeal.

It is also significant that in the *Goodspeed* case, *supra,* 33 Cal.App.2d 245, the finding of *alter ego* was made following a hearing at which only the canal company was before the commission; the appellate court had no difficulty in holding that it was conclusive and binding on the dominating power company.

There is a discussion in *People* v. *Western Air Lines, Inc.,* 42 Cal.2d 621, at pages 631-632 [268 P.2d 723], which is appropriate.

"The commission is not a judicial tribunal constitutionally established as a part of the judicial department of the state. It is also observed that the commission is in the position of acting at times as informer, prosecutor, jury and judge in matters coming before it. This takes place, for example, when the commission on its own motion issues an order directing some person, firm or corporation within its regulatory jurisdiction to show cause why it should not be required to perform or not perform a certain designated act or be subject to discipline for performing an act contrary to law or public utility regulation. The proceeding may take on the character of an adversary proceeding in which the commission furnishes evidence, judicially passes upon the competence and weight of that evidence and makes an order based upon it. This kind of establishment was seriously criticized in its early stages by those affected by it. But it is the law that when the system has been duly authorized by the Constitution of the state and the procedure is such as to satisfy the requirements of due process, both state and federal, no valid objection can be made to it. Due process as to the commission's initial action is provided by the requirement of adequate notice to a party affected and an opportunity to be heard before a valid order can be made. [Citation.] When the com-

mission has acted and an interested party is dissatisfied due process is further afforded by the right of petition for a writ of review to this court. And of course no law of this state could deprive a party whose rights were prejudicially affected of the right to apply to the Supreme Court of the United States for relief on federal constitutional grounds.''

■ It thus seems that the Legislature, under the plenary power conferred upon it by the state Constitution, has curtailed the power of the state courts to review decisions of the Public Utilities Commission, by providing that only the Supreme Court shall have the right of limited review; and that, if a party is dissatisfied, he has a choice of three forums only: The commission by way of rehearing; the Supreme Court by way of review; or the federal courts if the question of violation of a right guaranteed by the federal Constitution is involved.

■ The contention by the defendants that the Baugh Lumber Sales Co., Inc., was not specifically named as a party in the investigation proceedings of the commission and that, therefore, it was not bound by its order collapses upon a realistic view of the facts. If the findings are correct, and we must take them to be correct, then Coast Trucking, Inc., and Baugh Lumber Sales Co., Inc., are in fact one and the same corporate person for all purposes involving the regulation of transportation, and while the name of Baugh Lumber Sales Co., Inc., did not appear as a party in the Public Utilities Commission hearing, it was actually before the commission through its other name, Coast Trucking, Inc., for regulatory purposes. In any event, Coast Trucking, Inc., was properly before the commission at its hearing, and the commission's conclusions and order as to it were binding upon the trial court in this case; if the latter had made these essential findings of fact with respect to Coast Trucking, Inc., such findings would also have necessitated a judgment against Baugh Lumber Sales Co., Inc. The commission has heretofore made findings and orders in transportation industry cases similar to those involved here and the Supreme Court has denied petitions for writs of review therein. (*Soule Transp. Inc.*, 59 P.U.C. 260, writ of review denied *Soule Transp. Inc.* v. *Commission*, S.F. 21024; *Truck Maintenance & Triangle Grain Co.*, 59 P.U.C. 103, writ of review denied *Truck Maintenance* v. *Commission*, S.F. 20993; *IPCO Transp. Co.*, 60 P.U.C. 537, writ of review denied *IPCO Transp. Co.* v. *Commission*, S.F. 21334.) Such denials, even though without opinion, are

equivalent to a holding that the commission acted within its constitutional and statutory powers. (*People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 630 [268 P.2d 723] ; *Southern Calif. Edison Co.* v. *Railroad Com.*, 6 Cal.2d 737, 756 [59 P.2d 808] ; *Geibel* v. *State Bar*, 14 Cal.2d 144, 148 [93 P.2d 97].) To promulgate the viewpoint of the defendants to the effect that the commission may legitimately find one way and the courts a directly opposite way on the same facts would introduce an anarchic situation in the transportation industry. This would be patently intolerable.

The trial court was bound to follow the decision and the order, and the judgment must be reversed.

If this major question were eliminated the appellant's position on appeal could not be upheld. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].) Corporate identity may be disregarded in some instances and this conclusion is dependent normally upon the facts produced in the case (*Associated Vendors, Inc.* v. *Oakland Meat Co.*, 210 Cal. App.2d 825, 836-837 [26 Cal.Rptr. 806] ; *H. A. S. Loan Service, Inc.* v. *McColgan*, 21 Cal.2d 518 [133 P.2d 391, 145 A.L.R. 349]) ; the determination of corporate identity is one of fact and not of law (*Carlesimo* v. *Schwebel*, 87 Cal.App.2d 482 [197 P.2d 167]) ; and the ruling of the trier of fact will ordinarily not be disturbed on appeal if it is supported by substantial evidence (*MacPherson* v. *Eccleston*, 190 Cal. App.2d 24 [11 Cal.Rptr. 671]).

It would be a useless task in view of the holding of this court on the question of jurisdiction as to the essential matter involved to examine in detail the other points argued in their briefs by the appellant and respondents. It is sufficient to say that if it were not for the overriding effect of the decision of the Public Utilities Commission, the respondents would be entitled to an affirmance.

The judgment is reversed with instructions to the trial court to receive further evidence, if it be offered on the counterclaim, and thereafter to execute findings of fact and conclusions of law and a judgment in conformity with the views expressed in this opinion. The interests of justice requiring it, each party shall bear his own costs on the appeal.

Brown (R. M.), J., and Stone, J., concurred.

A petition for a rehearing was denied July 21, 1964, and respondents' petition for a hearing by the Supreme Court was denied August 20, 1964. McComb, J., and Peters, J., were of the opinion that the petition should be granted.